OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1909.

*(Continued from Volume 223)*

## A. M. COLEMAN, Appellant, v. J. A. LUCKSINGER.

**In Banc, November 29, 1909.**

1. **VENUE: Jurisdiction of Subject-Matter: Breach of Covenant of Seizin and Warranty: Transitory Action.** The common law rule that no local action could be maintained out of the jurisdiction in which it arose, no longer obtains in this State. The statute has altered that rule. A suit against the grantor in a deed conveying lands in Texas for damages for a breach of the covenant of seizin and warranty is transitory, and can be maintained in this State in the county where the covenantor resides, etc.

   *Held* by **WOODSON, J.,** dissenting, that an action in favor of a remote covenantee for a breach of covenant of seizin or warranty running with the land is based upon privity of estate, and not upon contract, and can only be brought in the county and State where the land lies. Such actions are local and not transitory.

2. ———: ———: ———. Title to real estate, within the meaning of section 564, Revised Statutes 1899, providing that suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county where

Coleman v. Lucksinger.

such real estate or some part thereof is situate, is not involved in a suit upon a covenant of warranty. Under that statute it must appear that title will be directly affected by the judgment, and not merely incidentally or collaterally or necessarily inquired into for the purpose of rendering a judgment that may be satisfied by the payment of money.

3. **LAWS OF ANOTHER STATE.** The courts of this State will not take cognizance of the laws of another State which have not been pleaded or proven.

4. **COVENANT OF WARRANTY: Breach: Lands in Another State.** Where plaintiff sues for a breach of the covenant of seizin and warranty contained in a deed conveying lands in Texas, and neither pleads nor proves the statutes of that state, and relies wholly on Missouri decisions to support his claim for damages, his right to recovery will be determined by Missouri laws.

5. ————: ————: **Recovery by Subsequent Grantee.** A covenant of seizin of an indefeasible estate in fee simple, which is broken at the time it is made, runs with the land, so that a subsequent grantee can maintain an action against the original covenantor for a breach thereof. So that where defendant, by deed, containing covenants of seizin and warranty, conveyed lands in Texas to Henry, and thereafter Henry by a deed of special warranty conveyed the same lands to plaintiff, and defendant had no title whatever, and neither he nor Henry was ever in actual possession, plaintiff can recover damages.

6. ————: ————: **Measure of Damages.** The measure of damages for a breach of a covenant of seizin and warranty in a deed is the amount the grantee paid, with interest. And where the deed recited a consideration of "one dollar and other lands," and there was no proof of what other lands were referred to, nor of what their value was, a judgment of one dollar for plaintiff will not be disturbed on her appeal.

Appeal from St. Clair Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.

*Nearing & Townsend* for appellant.

(1) Henry, at any time after the conveyance to him, could have brought suit upon the covenant therein and the measure of damages could then have been

"the value of the land as fixed by the parties themselves in the price given and received." Dickson v. Desire, 23 Mo. 166. In the case at bar there was an exchange of property and the parties placed the value of each piece of property at $6,000, and this is a reasonable value as shown by the defendant. The evidence shows that he said he was familiar with the land, that it was fenced and watered, a creek running through both sections, and that it was worth $5.00 per acre—1280 acres—or $6,400. The covenants having been broken at the time they were made the right of Henry then became a chose in action, assignable by Henry in the same manner and with the same rights as any other chose in action, and the conveyance of Henry to plaintiff was an assignment of such chose in action. Allen v. Kennedy, 91 Mo. 324; Johnson v. Johnson, 170 Mo. 48; Winningham v. Pannock, 36 Mo. App. 688; Hendrix v. Dickson, 69 Mo. App. 206; Laugenberg v. Dry Goods Co., 74 Mo. App. 20. (2) As between the original parties to the conveyance an action for breach of warranty being founded on contract is transitory and need not be brought in the place or county where the land is situated but may be brought in any court of competent jurisdiction. 8 Am. and Eng. Ency. Law (2 Ed.), 222. Being founded upon contract, under the common law, the right of action could not be assigned and a subsequent grantee had no remedy. To prevent such gross miscarriage of justice the theory of privity of estate which carried the right of action to a subsequent grantee was devised by the courts. This theory was sufficient for the purpose, providing there was some estate to which it could attach, but it is difficult to perceive a privity of estate, which runs with and attaches to the land, when there is no estate. In such cases the theory fails, and the subsequent grantee under the old rule was left without a remedy. In order to prevent any such wrong this court has adopted a very simple, logical and efficient

rule—that as between the original convenantor and covenantee the covenants were based upon a contract. A proceeding for breach of which could, and should be brought, as required by the statute, in the county where the defendant resides or could be found. That the covenant was broken when made and when . covenantor had neither possession nor any title to the land, did not run with the land. That this right of action could be assigned is settled in case of Lawless v. Collier's Ex., 19 Mo. 483; Mathney v. Stewart, 108 Mo. 76. And that the conveyance by the covenantee to a subsequent grantee is an assignment of such right of action. Mathney v. Stewart, 108 Mo. 76; Allen v. Kennedy, 91 Mo. 324; Johnson v. Johnson, 170 Mo. 48; Winningham v. Pennock, 36 Mo. App. 688; Hendrix v. Dickson, 69 Mo. App. 206; Langenberges v. Dry Goods Co., 74 Mo. App. 20.

*Omar E. Robinson* for respondent.

(1) Respondent contends that this suit is local in its character and could neither be brought nor maintained in this State. The rule applicable being declared in 8 Amer. & Eng. Ency. Law, page 222; Birney v. Haim, 2 Litt. (Ky.) 262; Clark v. Scudder, 6 Gray (Mass.) 122; Doulson v. Matthews, 4 T. R. 503 (Overruling Mostyn v. Eabrigas, 1 Cowp. 180); Shelling v. Farmer, 1 Stra. 646. (2) By the law of what state is this controversy to be determined? The law of Texas not having been pleaded or proven, the court cannot take judicial notice of it. The law of a foreign state must be pleaded or proven as a matter of fact or the court will not take notice of it. Charlotte (of color) v. Choteau, 25 Mo. 465; Hartman v. Railroad, 39 Mo. App. 88; Roll v. St. L. & Colo. S. & M. Co., 52 Mo. App. 60. When the statutes and decision of another state are relied upon to determine the rights of property they should be introduced in evidence at the trial. McClain v. Abshire, 63 Mo. App. 333; Clark v. Barnes,

58 Mo. App. 667. (3) Does a covenant of seizin of an indefeasible estate in fee simple which is broken when made run with the land so that a remote grantee can maintain a suit for damages against the original covenantor? If, as contended by appellant, all the covenants were broken when made, and neither title nor possession passed from respondent to Henry nor from Henry to appellant, and there being no privity of contract between the parties to this suit, respondent contends that appellant cannot maintain this action. ''The covenant of seizin is a personal covenant in the present tense and if broken at all is broken the moment of its creation, and is immediately converted into a mere chose in action, which is incapable of running with the land, and which can be taken advantage of only by the covenantee or by his personal representative, and neither passes to an heir, a devisee nor a subsequent purchaser. Rawle on Covenants, 336; Davidson v. Cox, 10 Neb. 150; Blondeau v. Sheridan, 81 Mo. 545; Paul v. Bay, 51 Mo. 288. Covenants *in praesenti* being broken as soon as made, cannot for obvious reasons, run with the land to subsequent owners, so as to entitle them to sue for breach thereof. 3 Washb., Real Prop., 394; Chambers v. Smith, 23 Mo. 179. Covenants only run with the land until broken; they then become choses in action. Shelby v. Hearne, 6 Yerg. 512; St. Savior v. Smith, Burr. 1271; Grescott v. Green, 1 Salk. 199; Tillotson v. Boyd, 4 Sandf. 516; Cuthbertson v. Irving, 4 Hurl & Norman, 742. (4) Respondent contends that under no circumstances can the appellant recover, if at all, an amount in excess of the purchase money paid by her with interest thereon, attorneys' fees and costs, and on the trial below no attempt was made to show what those expenditures were. 8 Am. & Eng. Ency. Law, p. 190; 2 Cyc. 1164; Matheny v. Stewart, 108 Mo. 73; Phipps v. Terpley, 31 Miss. 433; Brooks v. Black, 8 So. (Miss.) 332; White v. Presley, 54 Miss. 513; Hazlett v. Woodruff, 150 Mo. 540; St. Louis v. Bissell,

46 Mo. 160; Hall v. Bray, 51 Mo. 292; Kirkpatrick v. Downing, 58 Mo. 38; Fox v. Hall, 74 Mo. 317; Ward v. Ashbrook, 78 Mo. 517; Jones v. Whitsett, 79 Mo. 191; Allen v. Kennedy, 91 Mo. 329; Wyatt v. Dunn, 93 Mo. 463; Leet v. Gratz, 92 Mo. App. 432; Jones v. Hazeltine, 124 Mo. App. 674; Quick v. Walker, 125 Mo. App. 257; Fontaine v. Boatmen's Savings Institution, 57 Mo. 552; Wood v. Broadley, 76 Mo. 33.

GANTT, J.—This action was commenced in the circuit court of St. Clair county, Missouri, to recover ten thousand dollars for breach of covenants of seizin and warranty in a deed executed by the defendant Lucksinger, a resident of St. Clair county, Missouri, to Charles C. Henry of Jackson county, Missouri, of date June 20, 1899, conveying certain lands described as surveys 13 and 25 in block 230, Foley county, in the State of Texas, and wherein the consideration was expressed to be "one dollar and other lands." Subsequently Henry conveyed the same lands to the plaintiff by deed dated April 19, 1902, wherein the warranty was special only and the consideration "five dollars and exchange of property." This action was begun September 17, 1904, in St. Clair county, Missouri, for the breach of the said covenants of the defendant to Henry. The plaintiff alleging that she was damaged in the sum of ten thousand dollars, because the title to said lands had entirely failed, and the measure of her damages was the market value thereof, which she alleged to be ten thousand dollars.

The answer of the defendant was a general denial.

A jury was waived in the circuit court and the cause was submitted to the court upon the pleadings and the evidence and judgment was rendered for the plaintiff for the sum of one dollar. From that judgment she has appealed in due form.

The facts of the case are practically undisputed.

As already stated, the defendant, on June 20, 1899, being then and at the time of the commencement of this suit, a resident of St. Clair county, Missouri, executed and delivered to Charles C. Henry, of Jackson county, Missouri, a deed with covenants of seizin and warranty to the said lands in Texas, and thereafter on the 19th of April 1902, Henry and wife by a deed of special warranty conveyed the same lands to plaintiff. Plaintiff introduced evidence tending to show that defendant had no title whatever to the land, which his said deed purported to convey to Henry, and it was admitted that neither Henry nor the plaintiff was ever in the actual possession of said land. The evidence further tended to show the value of the Texas land as follows:

W. H. Ragin testified that if the land was dry land it was worth one dollar per acre; if it had living water on it, it was worth four or five dollars per acre, but the witness could not state of his own knowledge whether the land had living water on it or not.

Charles C. Henry testified that the defendant told him that there was a creek, which went through both sections, and there was a little timber along the creek, but it was mostly prairie; that it was pasture land, and the consideration was that it was worth five dollars per acre; that defendant placed a value of six thousand dollars upon the Texas land and the witness, Henry, placed the same value upon the property which he traded defendant for the said land, but he supposed that this was more than the property was worth. Witness never saw the land in Texas.

The plaintiff did not attempt to show the consideration she paid Henry for deeding said property to her. She did not show that she had paid the five dollars recited in the deed, nor that she had conveyed any other property to him as mentioned in the deed. The cause was tried upon her part on the theory that it was of no consequence what damages, if any, she

naturally sustained, but that her measure of recovery should be the value of the lands described in defendant's deed to Henry, without regard to the consideration passing from her to Henry.

There was no evidence as to the value of the property which Henry conveyed to the defendant in consideration of the conveyance to him of the property in Texas.

I.   Logically the contention of the defendant that this action was local in its character and could neither be brought nor maintained in this State, because the covenants of warranty and seizin related to lands in Texas, presents the first question for decision on this record.

The proposition, in order to be of any value to the defendant in this case, must deny the jurisdiction of the circuit court of St. Clair county over the subject-matter of this action, because if it were a mere question of jurisdiction over the person, the appearance of the defendant and his answer to the merits effectually waived any question of the jurisdiction over his person.

At common law no local action could be maintained out of the jurisdiction in which it arose, even though the result in many instances would be to deprive a party of all remedy, and where the action was brought by a remote grantee of the land on a covenant which ran with the land, the covenantee's right of action was based upon privity of estate and not on privity of contract, and the action was deemed local and must have been brought in the place or county in which the land lies.  [8 Am. & Eng. Ency. Law, p. 222; Birney v. Haim, 2 Litt. (Ky.) 262; White v. Sanborn, 6 N. H. 224; Lienow v. Ellis, 6 Mass. 331; Clark v. Scudder, 6 Gray (Mass.), 121.]

We concede that this is the settled common law rule, and the courts of the different states in our

Union, which have maintained this doctrine, have done so under stress of the common law, but, in our opinion, our statute providing for the place of bringing of suits, sections 562 and 564, chapter 8, article 3, Revised Statutes 1899, has changed this rule and this action on a covenant of seizin or warranty is not one required to be brought in the county in which the land lies.

In Oliver v. Loye, 59 Miss. 320, this question arose and Judge CAMPBELL, speaking for the Supreme Court of that State, while recognizing the common law rule as to local and transitory actions, said: "Originally, all actions were local, and great regard was had to place, so that every material allegation of pleading had to be accompanied by the averment of a place, in order that a jury might be summoned from the proper neighborhood, if issue should be taken on any of such allegations. The courts, in order to relieve against the difficulties which arose from the necessity of the proper venue in every action, took a distinction between matters which were local and those which were transitory, and invented a fiction whereby actions for causes of a transitory character, wherever they arose, might be maintained without regard to locality, 'while no cognizance could be taken of local actions save when a jury of the county could be summoned to try them.' A result was that for an injury to the person or chattels, and for a breach of any contract, even if it related to land, a remedy might be had in the courts of another state or country than that in which the injury was done or in which the land lay. In other words, if the action was transitory and not local, it was maintainable anywhere.

"The courts in England soon freed themselves from the fetters of locality, as to all causes of action of such nature that they might arise anywhere, and by means of falsehood, politely called fiction, and stated under a *videlicet,* which was an apology for not telling the truth, maintained actions on such causes of action

as arose out of the territorial jurisdiction of the courts of England. But such causes of action as could from their nature arise only in one place, and therefore were considered as local, and to be redressed only by local actions, did not arise with the frequency of the other class, and did not press upon the courts sufficiently to induce them to include them in the fiction invented to sustain the other class of actions, and as to them the courts continued bound by the idea of the place at which they arose. Therefore it is that courts governed by the common law as to actions and process have felt bound to deny a remedy for causes of action arising abroad, which could be redressed only by local actions. Tried even by this rule an action might be maintained in the circuit court of Copiah county, by the appellee against the appellant, for by our law it is not local but transitory. The only local actions under our statute are ejectment and actions of trespass for injuries to land. They must be brought in the county in which the land lies. All other actions must be brought with reference to the person of the defendant.

"The common law distinction of local and transitory actions does not exist here. The statute alone governs, and we cannot disregard it, and, because under the common law no remedy could be had by the assignee of a covenantee in a covenant of warranty of title of land lying in another state, deny a remedy in the courts of this State, which does not treat such an action as a local one. The courts which have held such an action not maintainable have done so under stress of the common law, which they felt so bound them as to constrain them to do what reason revolted at. Happily, we are freed from the constraint of this absurd rule, and look to our statutes to see what actions may be maintained by our courts."

In Tillotson v. Prichard, 60 Vt. l. c. 104, it was said: "The defendant contends that this court has no jurisdiction of the action; that it is local and can

only be maintained in the state where the land lies. Such, undoubtedly, was the rule at common law. By that law, if the action for the breach of a covenant was founded upon *privity of contract* it was transitory; e. g., covenant between the original parties; but if upon *privity of estate,* it was local. By this rule, all actions brought by the assignee of an estate conveyed with covenants running with the land, against the covenantor, to enforce such covenants, were local. In covenants concerning land, an assignee of the land is a stranger to the personal contract between the parties thereto; he is not privy to it; and the only right he has to maintain an action in his own name for their breach, is upon those covenants which 'run with the land,' or in other words, those which *follow the interest demised;* and hence the action is said to be founded upon *privity of estate.* It is when the right or obligation created by the covenant is attached to the interest conveyed or to the estate out of which it is created, so that the right or obligation upon an assignment of the estate, devolves upon the assignee. [Goulds Pl., chap. 3, sec. 118, div. 2; Chitty Pl. 270.] But it is argued that the action is local, for that in case of a judgment against the defendant he is entitled to an order from the court requiring a conveyance to him from the plaintiff of the lands in controversy, and the order could not be effectually made by a court in this State; and cite the cases of Catlin v. Hurlburt, 3 Vt. 403, and Shorthill v. Ferguson, 47 Iowa 284. We do not say that the defendant is entitled as a matter of right to such an order. The latter case was in equity and the court held that before it would enter judgment for the plaintiff he must tender a conveyance of the land to the defendant; the same result being reached in the other case cited, by stay of execution. The judgment of the court in such cases does not affect the title to the land, by any direct action or process, against the land itself; but the court having ob-

tained jurisdiction of the person of the owner it may, in a proper case, decline to enter judgment, or, it may stay execution after judgment, until he make such conveyance as justice requires him to do, as a condition of obtaining judgment and execution, Indeed cases in equity go much farther. [Rorer on Int. St. Law, 207, 211.] The judgment in no way affects the real estate; it is *in personam*, sounding in damages only. But it is enough to say that the common law, as to certain actions, including the one at bar, being local, has been superseded by our statute, regulating the places in which actions shall be brought, and none are local unless made so by statute. [Hunt v. Pownal, 9 Vt. 411; June v. Conant, 17 Vt. 656; Univ. of Vermont v. Joslyn, 21 Vt. 52.] This action by our statute is transitory.''

The Supreme Court of Indiana in Coleman v. Lyman, 42 Ind. 289, was confronted with this same proposition, and that court held that the statute of that state had determined where actions must be brought, and after citing three sections of their statute which provided, in short, that actions must be commenced in the county in which the subject of the action was situate, first, for the recovery of the real property, or an estate or interest therein, for the determination in any form of such right or interest and for injuries to real property; second, for the partition of real property; third, for the foreclosure of the mortgage of real property, and certain other sections providing for suits against corporate bodies and for the contesting of wills, or the establishment of the same, and then there was another section which provided that ''in all other cases the action shall be commenced in the county where the defendants or one of them has his usual place of residence,'' the court then proceeds to say, that the statute of that state must govern, and pointed out that *the action for convenant of seizin was not an action for the recovery of real property or of an estate*

*therein,* within the contemplation of that section. So in this State, by one general system our Legislature has provided for the venue of all civil actions. Section 562, Revised Statutes 1899, has reference to the residence of the defendant, and section 563 provides for the prosecution of actions in ejectment and replevin in the county where the specific property is sought to be recovered or seized, and section 564 provides that suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county where such real estate or some part thereof is situate. Section 4345 provides for the foreclosure of mortgages of real estate in the county where any part of the mortgaged premises is situated. And section 4374 provides for the bringing of partition suits in the county in which the lands sought to be partitioned are situated. In a word, our Legislature has completely altered the rule of the common law and provided for every contingency as to the bringing of suits, and it must be held that the common law rule as to this action no longer obtains in this State. Many decisions of this court illustrate what is meant by ''title to real estate'' being involved.

It is now the settled rule of adjudication that in order to give this court jurisdiction on the ground that title to real estate is involved, it must appear that the title will be directly affected by the judgment of the court. It will not suffice for it to be incidentally, collaterally or even necessarily inquired into if the judgment can be satisfied by the payment of money. [Price v. Blankenship, 144 Mo. 203; Hilton v. St. Louis, 129 Mo. 389; Barber Asphalt Co. v. Hezel, 138 Mo. 228.] In Luther v. Brown, 132 Mo. 72, it was expressly ruled that the title to real estate was not involved in a suit upon covenant of warranty, this court saying, among other things: ''If a judgment was rendered because of a defect of title to the real estate named, it would sound in damages and be personal against de-

fendant and no decree or judgment would be entered that could in any wise involve or affect the title of real estate, different from the way that all other real estate to plaintiff belonging might be affected."

To the same effect, Railroad v. Mahoney, 42 Mo. 467; Gregg v. Railroad, 48 Mo. App. 499. In our opinion this is not a case affecting the title to real estate within the meaning of section 564, Revised Statutes 1899.

II. Having reached the conclusion that the title to the land is only incidentally involved in the record, we are brought to appellant's second point, to-wit, "By the law of what State is defendant's liability to be ascertained?"

The lands attempted to be conveyed are in Texas, but plaintiff has not pleaded the law of Texas nor was any attempt made to prove it in the evidence. By a long line of adjudications, it has been ruled that the courts of this State will not take cognizance of the laws of a foreign state which have not been pleaded or proven. [Hazelett v. Woodruff, 150 Mo. 539; Charlotte v. Chouteau, 25 Mo. 465; Roll v. Smelting Mining Co., 52 Mo. App. 60.]

Moreover, plaintiff relies entirely upon Missouri decisions to support his claim for damages and he must be held to have elected to rely upon our laws for a recovery. In the absence then of any attempt to show that defendant's liability under the laws of Texas was otherwise than by the laws of Missouri, this court will apply our own laws in determining defendant's liability on his covenant of seizin. [Hazelett v. Woodruff, 150 Mo. 534, and cases cited.]

III. The defendant in support of the judgment of the circuit court contends that conceding all the covenants were broken when made and that neither title nor possession passed from the defendant to Henry, his covenantee, nor from Henry to the plain-

tiff, then there was no privity of contract between the plaintiff and the defendant and plaintiff cannot main-tain this action. Without restating the general law as laid down in the text-books and cases as to the cov-enant of seizin, it is sufficient for the purposes of this appeal to refer to some of the adjudications of this court.

In Allen v. Kennedy, 91 Mo. 324, the petition de-clared on the covenants of seizin and warranty. Judge BLACK, speaking for this court, said:

"As to the covenants of seizin of an indefeasible estate in fee simple, the claim is, that this covenant, if broken at all, is always broken when made, and does not run with the land. Whatever may be the rule elsewhere, with us, it is more than a covenant in the present tense. It is rather a covenant of indemnity, and it has often been held that it runs with the land to the extent that if the covenantee takes any estate, however defeasible, or if possession accompanies the deed, though no title pass, yet, in either event, this covenant runs with the land and inures to the subse-quent grantee, upon whom the loss falls. [Dixon v. Desire, 23 Mo. 151; Chambers v. Smith, 23 Mo. 174; Maguire v. Riggin, 44 Mo. 512; Jones v. Whitsett, 79 Mo. 188.]

"Both covenants in the Kennedy deed were broken before the plaintiff purchased; for Riddle, the owner of the title, had taken possession under it, and Patter-son was without title or possession. On this state of the case the contention of the defendant is, that cov-enants only run with the land until breach; that they then become choses in action, which cannot be assigned. Many authorities do hold that choses in action cannot be assigned so as to enable the assignee to sue in his own name at law, but that is not the law of this State. Damages arising from the breach of the covenants in a deed may be assigned, and when assigned, the as-signee, and he alone, can sue. [Van Doren v. Relfe,

20 Mo. 456.] The only remaining question is, whether the deed to plaintiff will operate as an assignment of the prior covenants so as to protect the assignee as to the damages he has sustained. As having some bearing upon this question, it may be stated that, by our statute, any person claiming title to real estate, may, though there be an adverse possession, convey his interest as if he were in the actual possession."

In support of the proposition that the covenants passed by the subsequent deed, the learned judge quoted with approval, Kimball v. Bryant, 25 Minn. 496; Scofield v. Iowa Homestead Co., 32 Iowa 318, and Wead v. Larkin, 54 Ill. 498, and then concludes his opinion as follows: "As our covenant of seizin runs with the land, what is there said as to the covenant of warranty is equally applicable to it. The Patterson deed contains full covenants, and it was certainly the purpose to transfer to plaintiff whatever covenants and assurances the grantor held, whether broken or unbroken, and no good reason is perceived why the intention of the parties should not be made effectual, instead of being frustrated and wholly defeated."

In Johnson v. Johnson, 170 Mo. l. c. 49, the case of Allen v. Kennedy, supra, was followed and approved. Learned counsel for the defendant quoted and relied upon the decision of this court in Blondeau v. Sheridan, 81 Mo. 545, but it is evident from the reading of that case that while the court held that a covenant against incumbrances was a covenant in praesenti and did not run with the land, and was not assignable at law, it did hold that a covenant of seizin ran with the land and that a remote covenantee could recover thereon against a remote covenantor. And in our opinion there is no conflict whatever between the decision in that case and the subsequent opinion in Allen v. Kennedy, 91 Mo. 324.

Accordingly we answer the query of the defendant in the affirmative, to-wit, that a covenant of seizin of

an indefeasible estate in fee simple, which is broken at the time that it is made, runs with the land, so that a subsequent grantee can maintain an action for damages for breach thereof against the original covenantor.

IV.   The only question upon which the plaintiff appealed to this court was as to the measure of damages to which she was entitled, and her contention is that she is entitled to recover the full value of the land at the time of the execution of the deed, whereas the defendant insists that the full measure of plaintiff's damages is the amount of purchase money which she paid, with interest.

In Matheny v. Stewart, 108 Mo. 73, Judge MACFARLANE, speaking for this court, said: "The rule of damages for breaches of warranty in the conveyance of land, in case of total failure of title, has ever been limited in this State to the purchase money paid, with interest thereon, and costs." Citing Dickson v. Desire's Admr., 23 Mo. 166; Hutchins v. Rountree, 77 Mo. 500; Lambert v. Estes, 99 Mo. 608. In Hazelett v. Woodruff, 150 Mo. 541, this court said: "The measure of damages upon breach of covenants of seizin and the right to convey is as a general rule, the purchase money, interest and costs. No case that we have seen has extended the rule beyond this."

Accepting this as the settled doctrine in this State and applying it to the facts in evidence, it appears that the defendant in his deed to Henry conveyed the land in question for the consideration of one dollar and other lands. There was no proof whatever as to what other lands were referred to in this description, nor what their value was. The court gave plaintiff judgment for one dollar. Speaking to this point in Allen v. Kennedy, supra, Judge BLACK said: "The plaintiff concedes that the full measure of his damages

is the amount he paid, with interest. For proof of damages he relies alone on the recital of three hundred and fifty dollars consideration paid by him in his deed from Patterson; and the question is whether this made out a *prima facie* case. As to the parties to a deed, the consideration clause is only in the nature of a receipt and is open to explanations and contradictions, not for the purpose of defeating the deed as a conveyance, but for the purpose of showing the true consideration. [Fontaine v. Boatmen's Savings Institution, 57 Mo. 552; Wood v. Broadley, 76 Mo. 33.] Generally, however, the recital in the consideration clause is not evidence of the amount paid, or the value of the premises as to third persons.''

As there was no proof of the amount of the consideration paid by the plaintiff or by Henry to the defendant, we think the court correctly awarded nominal damages only and that plaintiff has no standing in court to complain of the verdict of one dollar in her favor, and accordingly the judgment is affirmed. *Valliant, C.J., Fox* and *Lamm, JJ.,* concur; *Burgess* and *Woodson, JJ.,* concur in separate opinion; *Graves, J.,* not sitting.

## DISSENTING OPINION.

WOODSON, J.—The plaintiff instituted this suit in the circuit court of St. Clair county, against the defendant, to recover $10,000 as damages for a breach of covenant of seizin and warranty. A trial was had, which resulted in a judgment for the plaintiff in the sum of one dollar. From that judgment the plaintiff duly appealed.

The facts of the case are practically undisputed, and are substantially as follows, as appears from respondent's statement of the case, to-wit:

On June 20, 1899, J. A. Lucksinger, the respondent, a resident of St. Clair county, Missouri, executed

and delivered to Charles C. Henry of Kansas City, Jackson county, Missouri, a deed with covenants of warranty, conveying Surveys 13 and 25 in Block 230, Foley county, Texas; the consideration named in the deed was "one dollar and other lands." On April 19, 1902, the grantee named in the Lucksinger deed, Charles C. Henry and wife, made a special warranty deed to the same land to the appellant A. M. Coleman; the consideration recited in this deed was "five dollars and exchange of property." On September 17, 1904, A. M. Coleman, the grantee in the deed from Henry, filed this suit in the circuit court of St. Clair county, Missouri, wherein she seeks to recover from J. A. Lucksinger, who conveyed to Charles C. Henry, the sum of $10,000 in damages; her petition alleging that the title to the lands in Foley county, Texas, had entirely failed and that the measure of her damages was its market value, and that it was of the reasonable market value of $10,000.

The evidence shows that the appellant, who was plaintiff below, introduced no evidence as to the consideration passing from Henry to the respondent, Lucksinger, for the conveyance of the Texas property, nor did she show, or attempt to show what, if anything, she paid to Henry for deeding this property to her. She did not show that she had paid the $5 recited in the deed, or that she had conveyed the other property therein referred to. She tried her case upon the theory that it was of no consequence what damages, if any, she actually sustained, but that the measure of her recovery should be the value of the lands described in the Henry deed without regard to the consideration passed from her to him.

She also introduced testimony tending to show the value of the Texas land, which was substantially as follows:

W. H. Ragin, of Alpine, Texas, who testified, said: "If it is dry land, it is worth one dollar per acre; if

it has living water, it is worth four or five dollars per acre; I can't tell of my own personal knowledge whether this particular property has living water or not."

The other witness offered as to the value of the Texas land was Charles C. Henry, the grantor of the Texas property in the deed to appellant. He testified that the respondent, Lucksinger, told him that "there was a creek which went through both sections, and there is a little timber along the creek, but it is mostly prairie." "That it was pasture land," and "that the consideration was that it was worth $5 per acre," and "he, defendant, claimed the land was worth $5 per acre, if I remember right," also "the consideration between us was $6,000." And "$6,000 was the value placed upon the property in Texas, and I placed upon my property. I do not know the actual value of either property. I suppose $6,000 was a little more than the property was worth; I never saw the land in Texas." This was the extent of the testimony as to the value of the Texas property.

Appellant also introduced testimony tending to show that respondent had no title whatever to the land which his deed purported to convey to Henry; and it was admitted that neither Henry nor appellant was ever in the actual possession of said land.

Upon that evidence the court instructed the jury to the effect that appellant could receive only nominal damages, to which action she duly excepted.

I. The evidence disclosed by the record shows that respondent in the month of July, 1899, conveyed by deed of general warranty twelve hundred and eighty acres of land, situated in Foley county, Texas, to one Charles C. Henry, for a consideration of one dollar and other lands, as expressed in the deed. In April, 1902, Henry by deed of special warranty conveyed the same land to appellant for a stated consideration of five dollars and exchange of lands. At the time of the ex-

ecution of the deed from respondent to Henry the former placed the value of the land at $6,000, but no evidence was offered tending to show the value of the land conveyed by Henry to respondent in exchange of the lands in question. At the time of the conveyance to Henry, respondent had no title to the land, and, consequently, a breach of the covenant of seizin occurred *instanter* upon the execution of the deed.

Upon that state of facts it is contended by counsel for appellant that there was a breach of the covenant of seizin at the instant the deed from respondent to Henry was signed and delivered; that said covenant ran with the land, and that the deed from Henry to him carries with it and invested in her a right of action for said breach; and that the value of the land at the time respondent conveyed the same to Henry, in 1899, which the evidence tended to show, was about $6,000.

Upon the other hand, while counsel for respondent concedes that the breach of covenant of seizin was broken as soon as made, yet he contends that it was only a chose in action, did not run with the land, was not assignable at law and cannot be taken advantage of by respondent, a remote covenantee. Counsel for respondent in support of his position relies upon the case of Blondeau v. Sheridan, 81 Mo. 545. The facts of that case were substantially as charged in the petition, which was as follows:

"On January 18th, 1881, plaintiffs filed in the probate court of Buchanan county their demand for $433.-36, against said estate, and, at the April term, 1881, the court found against plaintiffs who then appealed to the circuit court, where they filed an amended petition, alleging, in substance, that McGee died in May, 1880, and that Sheridan administered on his estate in August, 1880. That plaintiffs are, and since 1872, have been partners. That on the 10th of January, 1873, McGee conveyed by deed to Mathias Bradley the north half of lot No. 10 of block 21, in the town of St. Joseph,

in the granting clause thereof employing the words 'grant,' 'bargain' and 'sell,' the deed containing, also, an express covenant that the grantor, his heirs and executors, etc., would warrant and defend the title to said real estate against the lawful claims of every person whatever. That prior to that time, on the 29th of March, 1872, McGee, the grantor, entered into a written agreement with one Hasting, by which he granted to Hasting, who owned the adjoining lot, the right to extend and build one-half of the thickness of a wall to be erected by said Hasting on the line between said lots, over and on the lot of said McGee (said lot No. 10) the dimensions of said wall to be footing four feet six inches in thickness, upper wall two feet thick, brick wall one foot six inches thick and eighty feet in length, one-half of which the entire length and height to extend over and on lot No. 10, with the further stipulation that said 'McGee, or his assignee should at any time, paying one-half the cost of said wall or such part thereof to the said Hasting or his assignee, have the right and privilege of building to and using said wall and make it constitute one of the walls he may choose to erect adjacent thereto, and may use said wall for all reasonable purposes in erecting and constructing such building.' That said agreement was duly acknowledged and was, on 9th of April, 1872, filed for record in the recorder's office of said county. That Hasting erected the wall mentioned in said agreement before McGee conveyed to Bradley.

"That on the 15th day of February, 1875, plaintiffs each became the owner of an undivided half of said lot No. 10 by virtue of conveyances from Mathias Bradley and his grantees, and afterwards mutually agreed to hold, and have ever since held the same as partnership property. That McGee, at the time of the conveyance to M. S. Bradley, was not seized of an indefeasible estate in fee simple in said real estate, that it was not free from incumbrance, etc., and that McGee

had not warranted or defended the title, but on the contrary, on the 29th of May, 1875, Lutz, assignee of Hasting, entered said lot No. 10 and evicted plaintiffs from that part of said lot upon which said wall stood, having the right to do so by virtue of the agreement aforesaid, and that plaintiffs were compelled to, and did on the 29th of May, 1875, pay to said Lutz $336.46, in order to extinguish his right and title to said part of said lot, and to said wall to the length of sixty-two feet and eight inches, and that it was worth that sum. And asked judgment for $443.46.'' The plaintiff obtained a judgment from which the defendant appealed. In discussing that case, the court, speaking through HENRY, J., on pages 551 to 554, used this language:

"The defendant objected to any evidence on the ground that the petition did not state facts constituting a cause of action. The covenant of general warranty, and two of the statutory covenants, viz: that of seizin and that against incumbrances, are alleged in the petition to have been broken. The facts alleged constituted no breach of the covenant of seizin. 'That covenant is not broken by the existence of easements or incumbrances which do not strike at the technical seizin of the purchaser.' [Rawle on Cov. (3 Ed.), 51.] In Kellogg v. Malin, 50 Mo. 496, it was held that the occupancy of land by a railroad track, under condemnation proceedings, was but an easement, and could not be relied upon as a breach of the covenant of seizin. There was, however, a breach of the covenant against incumbrances, but where did it occur? It is a covenant *in praesenti* and broken as soon as made. [Rawle on Cov. 110.] Again he says at page 336: 'It is a settled rule on both sides of the Atlantic that until breach, the covenants for title, without distinction between them, run with the land to heirs and assigns. But, while this is well settled, a strong current of American authority has set in in favor of the position that the covenants for seizin, for right to convey, and perhaps against in-

cumbrances, are what are called covenants *in praesenti.* If broken at all, their breach occurs at the moment of their creation; the covenant is that a particular state of things exists at that time, and, if this be not true, the delivery of the deed which contains such a covenant causes an instantaneous breach; these covenants are then, it is held, turned into a mere right of action, which is not assignable at law, which can be taken advantage of only by the covenantee or his personal representative, and can neither pass to an heir, a devisee, nor a subsequent purchaser.'

"Chancellor Kent, at page 555, 4th volume of his commentaries, says: 'The covenant of seizin, and of a right to convey, and that the land is free from incumbrances are personal covenants, not running with the land or passing to the assignee; for, if not true there is a breach of them as soon as the deed is executed. But the covenant of warranty and the covenant for quiet enjoyment, are prospective, and an actual ouster or eviction is necessary to constitute a breach of them, and that the general covenant to warrant and defend the title' is in effect a covenant for quiet enjoyment. [Page 558.]   Our statutory covenant against incumbrances, contained in the words 'grant, bargain and sell' is that the real estate was at the time of the execution of such conveyance free from incumbrance. The difficulty which exists when the incumbrance is of a kind which does not affect the possession of the grantee, as in case of a mortgage or a judgment lien, which must be extinguished by the grantee before he can claim more than nominal damages, is not encountered when the incumbrance is such, that, as in the case at bar and in Kellogg v. Malin, supra, the entire damages could at once be ascertained and assessed to the grantee, and there is no way of removing it but by purchase. While it exists, the covenantee cannot have the possession of that portion of the land.

"There was a breach of the covenant the moment

it was made, and M. S. Bradley then had a right of action, and, the covenant not running with the land, plaintiffs never had a right of action upon it. As to the covenant of a general warranty, the facts alleged showed a breach of the covenant. The note was not only an incumbrance on the lot, but Lutz's rightful possession of it, under the agreement between McGee and Hasting, constituted a breach of the covenant of warranty. 'Where the covenant is broken immediately no actual eviction or disturbance need be shown.' [Grannis v. Clark, 8 Cowen 41.] In Grist v. Hodges, 3 Deveraux 200, RUFFEN, J., said: 'The existence of an incumbrance, or the mere recovery in a possessory action under which the bargainee has not been actually disturbed, are held for technical reasons, not to be breaches of a covenant for quiet possession, or in other words of our warranties.'

"But that is a very different case from this, in which the bargainee never, in fact, was in possession, but was kept out by the possession of another under better title existing at the time of sale and deed and ever since. As between the bargainor and bargainee the latter is in by force of the Statute of Uses, but, if there be in reality an adverse possession, he can only be held to be in for an instant; for there will be no implication against the truth further than is necessary to make the deed effectual for its purposes. If such adverse possession be upon title paramount, then there is an eviction of the bargainee *eo instante* that the possession conferred by the statute takes place. Mr. Rawle says: 'The general principle, thus ably explained, has been recognized and applied in many other cases.' They are cited in note 2, page 254, and at page 255 he says: 'The rule best supported by reason and authority would seem to be this, where at the time of the conveyance, the grantee finds the premises in possession of one claiming under paramount title, the covenant for quiet enjoyment, or of warranty, will be

held to be broken, without any other act on the part of either the grantee or the claimant.'

"Here was a constructive eviction. The covenantee never had actual possession of the strip of land in question, which was held adversely, and when the covenantee by reason by the paramount title has never been able to obtain possession of the land, such inability to get possession will be an eviction. [Rawle On Cov. 251.] This is not the case of a party wall, which is a wall for the common use of the proprietors of adjoining estates, to the erection of which each contributes his due proportion of the costs, and each has a right to the use of the entire wall. That is but an easement, but here the wall belonged to Hasting, and, under the agreement, he had possession of a strip of land off of lot ten, adverse to the owner of said lot. It was a permanent structure and as effectually excluded plaintiffs from the possession, as if the owner of the wall had had a paramount title to the strip in question."

We do not understand this case as counsel for respondent does. While it holds that a covenant against incumbrances is a covenant in praesenti, does not run with the land, is not assignable at law, and cannot be taken advantage of by a remote covenantee, yet it does hold that a covenant of seizin, of quiet enjoyment, etc., does run with the land, and that a remote covenantee may recover thereon against the remote covenanter.

The case at bar is not a suit for a breach of covenant against incumbrances but was for a breach of covenant of seizin. So, instead of the Blondeau case, supra, being an authority supporting respondent's contention, it is directly opposed thereto and supports the position of counsel for appellant.

The same question again came before this court in the case of Allen v. Kennedy, 91 Mo. 324; and on pages 329 to 331, BLACK, J., speaking for the court, said:

"As to the covenant of seizin of an indefeasible

·estate in fee-simple the claim is, that this covenant, if broken at all, is always broken when made, and does not run with the land. Whatever may be the rule elsewhere, with us, it is more than a covenant in the present tense. It is rather a covenant of indemnity, and it has often been held that it runs with the land to the extent that if the covenantee takes any estate, however defeasible, or if possession accompanies the deed, though no title pass, yet, in either event, this covenant runs with the land and inures to the subsequent grantee, upon whom the loss falls. [Dixon v. Desire, 23 Mo. 151; Chambers v. Smith, 23 Mo. 174; Maguire v. Riggin, 44 Mo. 512; Jones v. Whitsett, 79 Mo. 188.]

"Both covenants in the Kennedy deed were broken before plaintiff purchased; for Riddle, the owner of the title, had taken possession under it, and Patterson was without title or possession. On this state of the case the contention of the defendant is, that covenants only run with the land until breach; that they then become choses in action, which cannot be assigned. Many authorities do hold that choses in action cannot be assigned so as to enable the assignee to sue in his own name at law, but that is not the law of this state. Damages arising from the breach of the covenants in a deed may be assigned, and when assigned, the assignee, and he alone, can sue. [Van Doren v. Relfe, 20 Mo. 456.] The only remaining question is, whether the deed to plaintiff will operate as an assignment of the prior covenants so as to protect the assignee as to the damages he has sustained. As having some bearing upon this question, it may be stated that, by our statute, any person claiming title to real estate, may, though there be an adverse possession, convey his interest as if he were in the actual possession. [R. S. 1879, sec. 673.] Kimball v. Bryant, 25 Minn. 496, was an action on the covenant of seizin in a deed from defendant to Hardy, who conveyed with full covenants

to the plaintiff. The grantor in the first deed had no title, and it did not appear that he was ever in possession. The court said: 'The covenant is taken for the protection and assurance of the title which the grantor assumes to pass by his deed to the covenantee; and where the covenantee assumes to pass that title to another, it is fair to suppose that he intends to pass with it, for the protection of his grantee, every assurance of it that he has, whether resting in right of action or in unbroken covenant; so that if, before enforcing his remedy for breach of the covenant, the covenantee execute a conveyance of the land, unless there be something to show a contrary intention, it may be presumed that he intended to confer on his grantee the benefit of the covenant so far as necessary for his protection—that is, that he intends to pass all his right to sue for the breach, so far as the grantee sustains injury by reason of it.' See, also, Scofield v. The Iowa Homestead Co., 32 Iowa 318.

"In Wead v. Larkin, 54 Ill. 498, the court, after reaching the conclusion that, where the covenantee takes possession and conveys, the covenant of warranty in the deed to him will pass to his grantee, although the covenanter may not have been in possession at the time of his conveyance, proceeds to say: 'It is not, however, to be supposed, because we do not lay down a broader rule than is required by the case before us, that we hold, by implication, the covenants would not pass if the immediate covenantee should, convey before taking possession. . . . . . . We should be inclined, rather, to say, that, although the covenant of warranty is attached to the land, and for that reason is said, in the books, to pass to the assignee, yet this certainly does not mean that it is attached to the paramount title, nor does it mean that it is attached to an imperfect title, or to possession, and only passes with that, but it means, simply, that it passes by virtue of the privity of estate, created by the successive

deeds, each grantor being estopped, by his own deed, from denying that he has conveyed an estate to which the covenant would attach.

"As our covenant of seizin runs with the land, what is there said as to the covenant of warranty is equally applicable to it. The Patterson deed contains full covenants, and it was certainly the purpose to transfer to plaintiff whatever covenants and assurances the grantor held, whether broken or unbroken, and no good reason is perceived why the intention of the parties should not be made effectual; instead of being frustrated and wholly defeated. Had Patterson brought the suit on the covenants, we are of opinion that the deed to plaintiff would have been a complete defense. The plaintiff, on making proof of damages, will be entitled to recover. That many authorities would lead to a different result is conceded, but the reason of many of them is overthrown, when it is shown that choses in action are assignable, that the covenant of seizin runs with the land, as an indemnity to the party who, in fact, suffers the loss, and that real property may be conveyed, though in the adverse possession of another."

This case also is a direct authority in support of appellant's contention. It, in substance, holds that even though the covenant of seizin is broken at the same instant the deed is executed, yet the covenant runs with the land, and a remote covenantee may maintain an action for damages for such breach against the covenanter, even though none of them ever had possession of the land. The same conclusions were reached in the following case: Johnson v. Johnson, 170 Mo. 48.

We must, therefore, decide this contention in favor of appellant.

II.  Counsel for appellant goes one step further, and contends that not only do the covenants of seizin and warranty run with the land, but he also contends

that the covenant having been broken at the instant it. was made the right of Henry then became a chose in action, assignable by Henry in the same manner and with the same rights as any other chose in action might. be assigned, and the conveyance of Henry to appellant was an assignment of such chose in action to her,. and that she may maintain suit thereon the same as. on any other chose in action. In support thereof counsel cites the Allen and Johnson cases, supra, and Winningham v. Pennock, 36 Mo. App. 688; Hendrix v. Dickson, 69 Mo. App. 206; Langenberg v. Dry Goods Co.,. 74 Mo. App. 20.

In our judgment that contention is untenable. All of those cases show that the covenant referred to in each ran with the land in favor of subsequent covenantees, but not independent of the land, as would the assignment of an ordinary chose in action, as is contended for by counsel for appellant. This is shown by the following language used by BLACK, J., on page 330, in the case of Allen v. Kennedy, supra:

"The covenant is taken for the protection and assurance of the title which the grantor assumes to pass by his deed to the covenantee; and where the covenantee assumes to pass that title to another, it is fair to suppose that he intends to pass with it, for the protection of his grantee, every assurance of it that he has, whether resting in right of action or in unbroken covenant; so that if, before enforcing his remedy for breach of the covenant, the covenantee execute a conveyance of the land, unless there be something to show a contrary intention, it may be presumed that he intended to confer on his grantee the benefit of the covenant so far as necessary for his protection—that is, that he intends to pass all his right to sue for the breach, so far as the grantee sustains injury by reason of it."

To the same effect is the case of Blondeau v. Sheridan, supra.

According to these two cases the covenant of seizin

passes under each deed with the land as an incident to the title, as it were, and not as an independent assignment, as is true of the assignment of an ordinary chose in action, as before stated, for otherwise the covenant would not pass with the land under succeeding deeds to subsequent covenantees.

The same question was presented to the Supreme Court of Vermont in the case of Tillotson v. Prichard, (60 Vt.), and on page 101 the court said: "Until breach, the covenant passes with the estate by purchase and can be enforced when broken, by the covenantee or his representatives, or, if the estate has been assigned, by the assignee of the covenantee, who claims under the seizin vested in him. [Rawle on Cov., sec. 213.] The covenant attached to a grant does not pass by the deed from the covenantee to his assignee, but only by the land conveyed. It passes not by the form of the conveyance, but merely as an incident to the land; so when the grantee takes no estate under the grant, no assignment of the land by him can transfer it to the assignee. As it is not capable of a direct transfer, so as to enable the assignee to maintain an action for its breach in his own name, it cannot pass by the operation of the assignment, for it cannot run with the land which the grantee does not have to convey. And this doctrine, Rawle in his work on covenants says, prevails generally throughout the United States."

The three cases cited from the Court of Appeals were suits for breaches of covenants against incumbrances. The principle underlying those cases does not necessarily apply to a covenant of seizin; and by bearing that fact in mind the apparent conflict between those cases and those of this court disappears. In that view of the case there is no conflict between them.

III. The next point presented by appellant's counsel regards her right to sue in the courts of this State for a breach of covenant of seizin affecting land situ-

ated in the State of Texas. In other words, is such an action local or transitory in character? Counsel for appellant contends that it is of the former class; while, upon the other hand, respondent's counsel contends it belongs to the latter character.

Counsel for appellant has cited us to no authority supporting his contention, except the cases before mentioned. If I correctly understand his position, it is this: that the deed from Henry to appellant by implication operated as an assignment of the former's cause of action for the breach of the covenant of seizin against respondent to her independent of and divorced as it were, from the land, and became thereby a simple chose in action, transitory in character, and that suit was properly brought thereon in the circuit court of St. Clair county, this State, where respondent resided. If the conclusion reached in paragraph two of this opinion is correct, then this contention must fail as a necessary corollary thereto.

Counsel for respondent, however, has cited us to an abundant authority supporting the contention presented by him. In 8 Amer. & Eng. Ency. Law, p. 222, the law governing such actions is stated in the following language: "As between the original parties to a conveyance, an action for breach of the covenants, being founded on contract, is transitory and need not be brought in the place or county where the land lies, but may be brought in any court of competent jurisdiction. But where the action is brought by a remote grantee of the land on a covenant which runs with the land, his right of action is based on privity of estate, and not on privity of contract. The action then becomes local and must be brought in the place or county in which the land lies."

Mr. Rawle, in his excellent work on Covenants for Title (5 Ed.), Sec. 302, states the rule as follows:

"Whenever the action of covenant is founded on privity of contract, it is of course transitory, and the covenantor is liable to suit wherever process may be served upon him. But whenever founded on privity of estate, as for example where the plaintiff, as assignee of the land, sues upon a covenant which runs with it, the action is of course local, and cannot be sustained unless the land be within the jurisdiction of the court in which the action is brought. This has long been settled, and in a rather late case in Massachusetts, where the plaintiff sued on a covenant of warranty upon the sale of land in Illinois to one under whom the plaintiff claimed through *mesne* conveyances, the plaintiff was nonsuited on the ground of want of jurisdiction, although both he and the defendant were residents of Massachusetts, and the former was, it was urged, without remedy unless the court should sustain the action."

At a very early date the question was presented to the Supreme Court of Kentucky, which is conceded by all to be one of the very highest authorities upon the law of real property, and the court said, in the case of Birney v. Haim, 2 Litt. 262: "If there is no privity of contract, and the action is founded on privity of estate only, such as a covenant that runs with the land in the hands of remote grantees, then the action is local, and must be brought in the county where the land lies." The same conclusion was reached by the Supreme Court of Massachusetts in the case of Lienow v. Ellis, 6 Mass. 331. The court there used this language: "When the action of covenant is founded on privity of contract between the parties, their executors or administrators, it is transitory and may be sued as a transitory action; but when it is founded on privity of estate, the action is then local, and must be sued in the county where the land lies. In the case before us, if the plaintiff can maintain an action of covenant,

upon the covenant on which he declares, he must maintain it as assignee of Bartlet, by virtue of his conveyance of the land; and his privity is a privity of estate, and not of contract."

In White v. Sanborn, 6 N. H. 224, the Supreme Court of New Hampshire held that the fact that the cause of action arose beyond the limits of the State did not render it transitory in character, but that the action was local and should have been brought in the county where the land lay.

In the case of Barker v. Damer, 1 Salk. 80, the Court of King's Bench held that where the land was located in Ireland, and the action was brought in England, by a remote covenantee, based upon a breach of covenant running with the land, the action would not lie, because the covenant was local, and the action should have been brought in Ireland.

The same rule is amplified and confirmed in the following cases: Livingston v. Jefferson, 1 Brock. 203; Watts v. Kinney, 23 Wend. 484; Eachus v. Illinois & Michigan Canal, 17 Ill. 534; Worster v. Winnipiseogee, 25 N. H. 525; Lienow v. Ellis, 6 Mass. 331; University of Vermont v. Joslyn, 21 Vt. 52; Watts v. Kinney, 6 Hill 82.

The courts seem to be uniform in holding that the fact all parties to the covenant are residents of a State different from the one in which the land is situated, and that therefore unless the action could be maintained in the State in which the parties reside, the aggrieved party would be without remedy, is wholly immaterial. [8 Amer. and Eng. Ency. Law, p. 223; Clark v. Scudder, 6 Gray (Mass.) 122; Doulson v. Matthews, 4 T. R. 503 (overruling Mostyn v. Fabrigas, 1 Cowp. 161); White v. Sanborn, 6 N. H. 224; Shelling v. Farmer, 1 Stra. 646.]

According to all of the authorities of this country and of England, an action in favor of a remote covenantee for a breach of covenant of seizin or other war-

ranty running with the land is based upon privity of estate, and not upon contract. Consequently, they hold that the action is local and must be brought in the State and country where the land is situated, and not elsewhere.

And in my opinion this rule has not been changed or modified by our practice act. Sections 562, 563 and 564, Revised Statutes 1899, read as follows:

"Sec. 562. Suits instituted by summons shall, except as otherwise *provided by law,* be brought: First, when the defendant is a resident of the state, either in the county within which the defendant resides, or in the county within which the plaintiff resides and the defendant may be found; second, when there are several defendants, and they reside in different counties, the suit may be brought in any such county; third, when there are several defendants, some residents and others non-residents of the state, suit may be brought in any county in this state in which any defendant resides; fourth, when all the defendants are non-residents of the State, suit may be brought in any county in this State; fifth, any action, local or transitory, in which any county shall be plaintiff, may be commenced and prosecuted to final judgment in the county in which the defendant or defendants reside, or in the county suing and where the defendants, or one of them, may be found."

"Sec. 563. Suits commenced by attachment against the property of a person, or in replevin or claim and delivery of personal property, where the specific property is sought to be recovered, shall be brought in the county in which such property may be found; and in all cases where the defendant in actions in replevin or claim and delivery of personal property is a non-resident of the county in which suit is brought, service shall be made on him as under like circumstances in suits by attachment."

"Sec. 564. Suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county within which such real estate, or some part thereof, is situate."

And section 4345 provides for the bringing of actions for the foreclosing of mortgages against real estate in the county where the premises are situate, etc., and section 4374 provides for the bringing of suits for the partition of real estate, etc.

Clearly section 562 has no application to the case at bar. That section provides that "suits instituted by summons shall, except as otherwise provided by law, be brought," etc. The language of the statute should be closely scrutinized. The language is that suits "shall, *except as otherwise provided by law,* be brought," etc., and does not say, except as is provided for in this article or chapter, as is generally the case where the Legislature intended the act to be complete and exclusive upon a matter.

It should also be borne in mind in this connection, that the common law is just as binding and efficacious in its principles as are the provisions of a statute. There is no more magic or power embodied in the latter than is possessed by the former. Each is the law of the land and stands upon an equal if not upon the same basis; and especially is this true when we view it under the light of the provisions of section 4151, Revised Statutes 1899, which provides that the common law of England, etc., "shall be the rule of action and decision in this State, any law, custom or usage to the contrary notwithstanding." The authorities before cited conclusively show that under the common law such actions as this one could only be maintained in the county and state where the land is situate, for the reason stated therein, that they are local and not transitory actions. This being true, then it is to be seen that at the time of the enactment of section 562 there was then in operation in this State a rule of the

common law which provided that such actions should be brought in the county where the land was located, and not elsewhere. Then under both the spirit and letter of said section, it does not and cannot apply to this action, for the reason that under the exception thereto it could not apply to those cases where the law as it then existed provided the place where such suits should be brought. Besides this, said section 562 does not purport to abolish the distinction between local and transitory actions, but has reference to the residence of defendant and to the suits that might be brought against him in the county of his residence, or in that of the plaintiff and where the defendant might be found, or in case he is a non-resident, then such as might be brought against him wherever found in the state. But none of those cases belong to the class of actions called real or local actions, for the obvious reason that sections 563, 564, 4345 and 4374 in express terms provide specially where most of them shall be brought, which may be and often are brought in different counties from those mentioned in section 562. In addition to this, the fifth clause of the latter section in express terms recognizes the existence of both *local and transitory* actions, and specially provides that when a county shall bring an "action, *local or transitory,*" it "may be, commenced and prosecuted to final judgment in the county in which the defendant or defendants reside, or in the county suing and where the defendants, or any of them, may be found." The well-known maxim, *expressio unius est exclusio alterius,* applies specially to that section. The fact that the Legislature gave to the various counties of the State the right to sue the defendant on any *local or transitory* cause of action in the county in which he resides, or in the county suing and where the defendant may be found, excludes the idea that the Legislature intended to give that right to any and all other parties mentioned in that section.

It is conceded by all parties that section 563 has no application, for the reason that it relates exclusively to ejectment and replevin suits; and the case at bar does not fall in either of those categories.

Nor can it be seriously contended that section 564 is applicable to this case, for the reason that it has reference to real estate located within this State, and not to lands located beyond its domain; but should it be conceded that it, in express terms, referred to lands situate in another state or county, then, clearly, such provision would be void, for the reason that legislative enactments can have no extra-territorial operation, nor can the courts of this State acquire jurisdiction over lands located beyond its boundaries. This is elementary and must be conceded by all.

It is equally clear that neither section 4345 nor 4374 has any application to this case; the former provides where suits for the foreclosure of mortgages shall be brought, and the latter where suits for the partition of real estate shall be brought.

From this short resume of the practice act, it seems clear to my mind that it was the design of the Legislature to leave the common law rule as to the place of bringing suit for breaches of covenants which run with the land in full force and unaltered.

This is made more apparent when we recall the fact that none of the sections of the statute before mentioned, either in express terms or by implication, purports to abolish local actions, or to change the common-law rule as to the place where such suits shall be brought, except in the fifth clause of section 562 where the various counties of the State are authorized to bring such suits, as well as transitory actions against the defendant in the county where he resides, or in the county bringing the suit and where the defendant may be found, regardless of the location of the subject-matter of the suit. No other section or part of a section undertakes to change the common law rule in that

regard. And nothing before stated is militated against in the least by what is said in the following cases relied upon by appellant: Oliver v. Loye, 59 Miss. 320; Tillotson v. Prichard, 60 Vt. 94; Coleman v. Lyman, 42 Ind. 289.

As to the first case mentioned, it is sufficient to say that the case there brought was a proceeding in equity, which was never hampered by the character of the action involved; and the court in the discussion of that phase of the case, on page 323, used this language: "But apart from all this, which is conclusive of the case, this is not an action at law, but a suit in equity, which never was hampered by distinctions of local and transitory causes of action, as were courts of law." Nor can that case be claimed as authority supporting the position contended for by appellant, for the reason that the Mississippi statute under consideration must have been quite different in its provisions from ours. While the statute is not set out in the opinion, yet I judge it must differ materially from ours, for the reason that in the discussion of that case the court used this language: "The only local actions under our statute are ejectment and actions of trespass for injuries to land. They must be brought in the county in which the land lies. All other actions must be brought with reference to the person of the defendant. The common law distinction of local and transitory actions does not exist here. The statute alone governs, and we cannot disregard it, and, because under the common law no remedy could be had by the assignee of a covenantee in a covenant of warranty of title of land lying in another state, deny a remedy in the courts of this State, which does not treat such an action as a local one. The courts which have held such an action not maintainable have done so under stress of the common law, which they felt so bound them as to constrain them to do what reason revolted at. Happily, we are freed from the constraint of this absurd

rule, and look to our statutes to see what actions may be maintained by our courts.'' That language shows the Legislature had by statute abolished all local actions in that state except actions in ejectment and actions of trespass for injuries to lands, but no such statute exists in this State.

And what has been said of the Mississippi case as to the statute applies also to the Vermont case. In the latter neither the statute nor its substance is stated, but the court in passing upon the question, at page 106, said: ''But it is enough to say that the common law as to certain actions, including the one at bar, being local, has been superseded by our statute regulating the places in which actions shall be brought, and none are local unless made so by statute.'' That language of the court shows clearly that all common law local actions have been abolished by the Vermont statute, and that said state has no local actions except where they are made so by legislation.

In the Indiana case, the court set out the substance of the statute in the following language: ''First. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for injuries to real property. Second. For the partition of real property. Third. For the foreclosure of a mortgage of real property. The next section relates to actions which must be commenced in the county where the cause or some part thereof arose. Section thirty relates to actions against a corporation, company, etc., having an office or agency in any county for the transaction of business, in which case any action growing out of the business of such office may be brought in such county. Section thirty-one relates to the place where an action to establish or set aside a will must be brought. Section thirty-two relates to the venue of actions against railroad, or canal corporations, or companies, or the owner of a line of stages or coaches, etc. Section thir-

ty-three provides, that in all other cases, the action shall be commenced in the county where the defendants or one of them has his usual place of residence.'' In its construction of the statute, the court, on page 291, disposed of the matter in the following language: ''If it can be insisted, with any show of reason, that any of these sections required the action in question to be brought in the county where the lands are situated, it must be the first which we have quoted, and the first division of that section. But we think that section does not make the action in such case local. This was not an action 'for the recovery of real property, or of an estate or interest therein;' nor do we think it was an action 'for the determination in any form of such right or interest,' within the contemplation of that section. Hence we are of the opinion that the objection made to the jurisdiction of the court is not well founded.''

By reading that language it will be observed that the court took it for granted that the common-law rule regarding the place for bringing such actions was not in force in that state, and the question before the court was whether or not said statute required suits of this character to be brought in the county in which the real estate was located; and the court, in my opinion, properly decided that question in the negative. It does not appear from the opinion whether or not the common-law rule had ever been in force in that state; but it must necessarily follow from what was said by the court that the rule, if it ever was in force in that state, had been abrogated prior to the enactment of the statute then under consideration, for the reason that if it was then in force, the holding of the court, that said section did not *require* the action to be brought in the county where the land was situated, would be meaningless. In other words, the question there before the court was not that said statute had abolished the common-law rule, but was, did that statute *require*

such actions to be brought in the county where the land was located. Clearly that case is not in point here.

We must, therefore, hold that the courts of this State have no jurisdiction over the subject-matter of this action.

This view of the case renders it unnecessary to pass upon the other questions presented by the record; and, finding no error therein detrimental to the rights of appellant, the judgment should be affirmed. *Burgess, J.,* concurs.