## PATRICK J. STAED, Respondent, v. JOSEPH ROSSIER et al., Appellants.

**St. Louis Court of Appeals. Argued and Submitted April 3, 1911. Opinion Filed May 2, 1911.**

1. **COVENANTS OF WARRANTY: "Grant, Bargain and Sell:"** Rights of Subsequent Grantee. Under section 2793, Revised Statutes 1909, the covenants created by the unlimited use of the words "grant, bargain and sell" in a deed are covenants of warranty and of seizin, for quiet enjoyment, and against incumbrances, which covenants run with the land and may be sued upon by any subsequent grantee who sustains loss by failure of or defect in the title.

2. ————: Action for Breach: Conveyances: Evidence: Contradicting Consideration Clause by Parol Evidence. While evidence to contradict or vary the consideration clause of a conveyance, where there is no issue of fraud, is inadmissible, if offered to defeat the conveyance, as such, yet the consideration clause is not conclusive but only prima facie evidence of the receipt of the amount therein named, and in an action for breach of a covenant of warranty, parol evidence is admissible to show that the actual consideration which passed was greater or less than that expressed in the deed, for the purpose of increasing or diminishing the damages.

3. ————: ————: Measure of Damages. Where a grantor of real property is sued for breach of covenant of warranty by the grantee of his grantee the measure of damages is the value of the land at the time of plaintiff's purchase, as fixed by the parties, but plaintiff cannot recover, by way of damages, more than he has lost, nor can he recover more than the original grantor received.

4. ————: ————: ————: Facts Stated. A grantor, with covenants of warranty of seizin against incumbrances and for quiet nants of warranty of seizin, against incumbrances and for quiet deed of trust. The grantee conveyed to a third person for $6500, who took subject to the $4500 incumbrance, on which he had not paid anything except interest. The third person was ejected for defect in title. *Held,* that he could recover from the original grantor only $1000 with interest from the date of his eviction.

5. **EQUITY: Applying Equitable Principals to Actions at Law.** The abolition of the distinction between legal and equitable systems of practice is so complete in this state, as to tend to cause courts, in an endeavor to arrive at the very justness and fairness of the cause, to mingle the two and to try to do equity even in strictly legal actions.

6. **COVENANTS OF WARRANTY: Action for Breach: Measure of Damages: Offsetting Rents Against Interest.** Where, in an action for breach of a covenant of warranty, it appears that the grantee was in possession of the property from the time he received his deed to the date of his eviction, he can not recover interest on the amount paid from the date of such payment to the date of his eviction, since the law conclusively presumes the rents are an offset to the interest.

7. ——: ——: **Partial Failure of Title: Measure of Damages.** In an action for breach of a covenant of warranty, where it appears there was not a total failure of title, the plaintiff is entitled to recover *pro tanto* only.

8. **APPELLATE PRACTICE: Theory of Parties: Inconsistent Positions.** Where counsel for appellant, on appeal, asks for the reversal of a judgment against appellant and the rendition of another judgment against him in a certain amount, as being the correct amount under a certain theory, the court will not determine the question as to whether appellant is liable for a different amount, under another theory.

9. ——: **Rendition of Judgment by Appellate Court.** The appellate court will not accede to the request of counsel for appellant to enter judgment against appellant for the correct amount, but will reverse the judgment and remand the cause with directions; that course being in accordance with the practice and preference of the court.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

*Henry W. Allen* for appellants.

(1) The measure of damages for a breach of the covenant of seizin, in case of total failure of title, has always been limited to the purchase money paid, with interest thereon and costs. Matheny v. Stewart, 108 Mo. 73; Hutchins v. Roundtree, 77 Mo. 500; Hazelett v. Woodruff, 150 Mo. 534; Lawless v. Collier, 19 Mo. 480; Topley v. Lebeaume, 1 Mo. 550; Collier v. Gamble, 10 Mo. 467; Reese v. Smith, 12 Mo. 344; Tong v. Matthews, 23 Mo. 437; Murphy v. Price, 48 Mo. 247; Evans v. Fulton, 134 Mo. 653. (2) A remote grantee cannot recover from an original grantor any greater amount than

the immediate grantee could have recovered. Dickson v. Desiris' Admr. 23 Mo. 151; Shorthill v. Ferguson, 44 La. 249; Taylor v. Wallace, 20 Colo. 211; Martin v. Garden, 24 Ga. 533; Cook v. Curtis, 68 Mich. 611; Lawrence v. Robertson, 10 S. C. 8.   (3)   A grantee suing for recovery for the breach of a covenant of warranty, if he has had possession and use of the premises, cannot recover interest for any period prior to his eviction, without proof that he has responded to his evictor for mesne profits.   Hutchins v. Roundtree, 77 Mo. 500; Pence v. Gabbert, 70 Mo. App. 201.   (4)   There is no evidence that respondent incurred any expenses in defending the suit brought against him in the St. Louis Circuit Court. (5)   There was not a total failure of title in the present case, and respondent was, therefore, entitled only to a *pro tanto* recovery. Lawless v. Collier, 19 Mo. 480.

*Daniel Dillon* for respondent.

(1)   In an action for breach of covenant of warranty the measure of damages is the value of the land at the time of the warranty, and where the parties (vendor and vendee) have agreed on the purchase price that is taken as the value of the land. Field on Damages, p. 384, sec. 461; 3 Sedgwick on Damages, p. 74 and 75, sec. 951 and 952; Sutherland on Damages (3 Ed.), p. 1738, sec. 605; Staats v. Ten Eyck, 3 Caines Ill.; Bloom v. Wolfe, 50 Mass. 286; Hodges v. Thayer, 110 Mass. 289; Lawless v. Colliers E. 19 Mo. 484.   (2)   It is immaterial that the whole purchase price was not paid in cash. Railroad v. Montgomery, 86 Fed. 251; Pences Heirs v. Duvalls Heirs, 9 Monroe 48; Koestenbader v. Pierce, 41 Iowa 204; Hayme v. American Trust Inv. Co., 36 S. W. 860; Eaton v. Lynch, 24 Wis. 438, 26 Wis. 63.

REYNOLDS, P. J.—This is an action in which plaintiff seeks to recover from defendants damages for breach of the covenant of warranty contained in a certain deed dated December 10th, acknowledged December

11, 1906, by which deed they conveyed to Richard H. and Agnes R. Ashby, husband and wife, a certain lot in the city of St. Louis, Ashby and wife having conveyed the same property to plaintiff by their general warranty deed, dated May 7, 1907.

It is averred in the petition upon which the case was tried that the conveyance from defendants to Ashby and wife was on consideration of $5500, and that by their deed, defendants covenanted and agreed that they, their heirs, executors and administrators would warrant and defend the title to the premises unto Ashby and wife and unto their heirs and assigns forever, against the claims and lawful demands of all persons whomsoever. It is further averred that Ashby and wife took possession of the premises under and by virtue of the deed and executed and delivered a deed of trust, conveying the property to a trustee, to secure the payment of a principal note for $4500 and six interest notes, each for $112.50, it being averred that all of the notes are owned and held by defendants; that afterwards on May 7, 1907, Ashby and wife sold the property to plaintiff, subject to the aforementioned deed of trust, for the price and sum of $2100 cash then and there paid by plaintiff and that Ashby and wife had thereupon executed and delivered to plaintiff their deed conveying the title to plaintiff and that under that deed plaintiff took possession of the lot and held possession until dispossessed. It is further averred that neither of defendants had or owned or held the title to the piece of land or any part of it at the time they sold the same to the Ashbys or at any other time, and that the Ashbys had never owned or held title to the land or any part of it. It is further averred that plaintiff, with others, was sued in the circuit court of the city of St. Louis, by the persons who own and hold the title to the land, to establish their title thereto; that defendants were notified of the suit and defended it and that the court rendered a judgment and decree to the effect that plaintiffs in that suit were the owners and holders

of the title and that plaintiff in this suit and those claim-
ing title under the deed from defendants and the Ashbys
had no title to the land; that afterwards a suit in eject-
ment was commenced in the circuit court of the United
States for the Eastern Division of the Eastern Judicial
District of Missouri, by certain parties against a tenant
of plaintiffs for an undivided 281-360 of said land, and
that it was determined in said suit that the defendant
therein (plaintiff's tenant) had no title to the land and
final judgment was entered in favor of plaintiffs; that
under a writ of possession issued on said judgment, he
(plaintiff in this suit) was, on January 6, 1909, evicted
from said land and dispossessed and deprived of the pos-
session thereof by the plaintiffs in that suit.   It is
further averred that plaintiff employed counsel and de-
fended the suit in the circuit court of the city  of  St.
Louis at a cost and expense of $150 and that before he
was aware that defendants had no title to the property
when they had sold it to the Ashbys, plaintiff had paid
to defendants three of the interest notes secured by the
deed of trust, each for $112.50.  Averring that defend-
ants have not kept or observed their agreement and
covenant to warrant and defend the title to the land as
contained in their deed to the Ashbys but have failed to
do so to his damage, plaintiff demands judgment for
$2100 for breach of the covenant, interest on that
amount at 6 per cent per annum from May 8, 1907, $150
for his expense in defending the suit and $337.50, the
amount of the three interest notes paid to defendants as
aforesaid, a total demand of $2788.50, with interest on
the same from date of institution of the suit and for
costs.   The suit was instituted January 14, 1909.

The answer was a general denial.

The trial was before the court, a jury having been
waived.   The deed from defendants Rossier and wife to
Ashby and wife was in evidence and is in the statutory
form of a general warranty deed as prescribed in this
state and purports "to be in consideration of the sum of

$10 and other valuable considerations to them paid by
the said parties of the second part, the receipt of which
is hereby acknowledged." It was in evidence at the trial
and not disputed that the real consideration was $1000
cash paid to defendants and the principal note for $4500
and the interest notes above referred to therein, executed
by Ashby and wife to defendants. The petition avers
that defendants are the present owners of this $4500
note, and that seems to have been conceded at the trial.
The deed from the Ashbys to plaintiff Staed is not in the
abstract of the record and we are not advised whether
any mention was made in it of the deed of trust, but
plaintiff testified that he bought subject to the deed of
trust. Transcripts of the record of the two actions
above referred to were introduced in evidence, estab-
lishing the averments of the petition with respect to the
purpose and outcome of those two actions. There was
evidence that the property, the lot in question, had been
taken possession of on January 6, 1909, under the writ
of possession issued in the ejectment suit above referred
to against plaintiff's tenant, the United States Marshal
stating in his return that he had taken possession under
the writ of 20-45 and on that date turned over its pos-
session to the attorney for the plaintiffs in that action,
that attorney testifying that he had then taken posses-
sion of the entire property under the decree rendered by
the state court in the suit to quiet title, he holding pos-
session for his clients from that date apparently to the
trial of this action. So that on that date, January 6,
1909, plaintiff Staed was ousted from posession of the
entire property and has ever since been out of pos-
session.

A witness introduced on behalf of plaintiff and who
had been the agent of Mr. Rossier, testified that when
the property was sold to plaintiff Staed and he received
a deed to it, he had taken the property subject to
the $4500 incumbrance before mentioned, and that as

the interest notes fell due plaintiff had paid some of them. It was further in evidence that the suit to quiet title, at the time of this trial, was pending on appeal in the Supreme Court of this state, the plaintiff, however, who had been one of the original parties to the suit and had joined in the appeal dismissing his appeal. A stipulation as to title which had been entered into on the trial of one of the cases above referred to was also read into this record. It is not necessary to set it out in full, it being sufficient to say that it tended to show that neither the original grantors, defendants here, nor their grantees, the Ashbys, who were grantors of this plaintiff, respondent here, had any title to the premises. At least that is the way we understand this record. The matter of whether the whole title or only an undivided 281-360th interest in it failed is not important for determination in the view we take of the case and of the sole point made in it for a reversal by counsel for appellants. The whole title seems to have been settled against plaintiffs in the suit to quiet title.

Plaintiff, testifying in his own behalf, stated that the consideration set out in the deed from the Ashbys to himself was $6600, and that that is the correct amount; that when he purchased he first paid $150 earnest money and then paid $1857.50, and that he purchased subject to the deed of trust on it for $4500, together with the interest on that; that after he had bought the property he had paid three of the interest notes, amounting to $337.50 and had then stopped paying. After he purchased the property he had had it rented; at the time the marshal took possession, however, it was vacant, plaintiff then having a "For Rent" sign on it and having in his possession the keys to the premises, which consisted of a house on Morgan street in St. Louis; when he went down to the property after the marshal had taken possession he found himself out of possession and had never been in possession since.

It was admitted that defendant Rossier, who was not present, had previously testified that in his sale of the property to the Ashbys, he had received $1000 cash and a deed of trust for $4500, securing a note running for three years and that no part of the $4500 had been paid, and it was agreed at the trial of this case that if defendant Rossier was present he would so testify.

The only evidence introduced on the part of defendants above this stipulation as to what Mr. Rossier would testify was the affidavit for the appeal and the order granting the appeal to the defendants in the case before referred to as having been pending in the circuit court of the city of St. Louis and subsequently appealed to the Supreme Court. It appeared that no bond had been given on that appeal and it was not controverted that Mr. Staed had withdrawn from the appeal.

At the conclusion of the testimony the court rendered judgment in favor of plaintiff and against defendants for $2196.90 and costs. Defendants duly filed a motion for new trial and that being overruled and exception saved to the action of the court, duly prosecuted their appeal to this court.

The sole assignment of error made by the learned counsel for appellants, defendants below, is that the judgment is excessive for the reason that the evidence did not authorize a recovery of more than $1000 and interest thereon from January 6, 1909, to October 18, 1909 (date of judgment), whereas the court entered judgment for $2196.90, counsel claiming that in so doing the court had committed error. In his argument in support of the assignment, that counsel submits that the judgment should be reversed and a judgment entered in this court for $1000 and interest from January 6, 1909.

The only question presented to us by the respective counsel is as to the measure of damage to be here applied. Plaintiff's right to maintain the suit is conceded. Even without such concession it is too well established to admit of argument. That the covenants carried by the

unlimited use of the words, "grant, bargain and sell," contained in the deed from defendants to plaintiff's grantors, are, under section 2793, Revised Statutes 1909, covenants of warranty and for quiet enjoyment, and against incumbrances, as well as of seizin, which run with the land, and that they may be sued upon by any subsequent grantee who sustains a loss by failure of or defect in the title has been settled by many decisions of our courts. [See *passim,* Dickson v. Desire's Admr., 23 Mo. 151; Langenberg v. Dry Goods Co., 74 Mo. App. 12; Leet v. Gratz, 124 Mo. App. 394, 101 S. W. 394.] That these covenants inure to the benefit of the subsequent grantees or assigns is universally conceded—save as to the covenant of seizin—not only in this country but in England. [Rawle on Covenants for Title (5 Ed.), sec. 213, foot page 318; Maupin on Marketable Title to Real Estate (2 Ed.), sec. 153, top page 377, (hereafter referred to as "Maupin.")]

Under our decisions, following those of many other of the states, but departing from the English and some American rules of decision, the covenant of seizin is held to be covered within the statutory words and to run with the land. [Dickson v. Desire's Admr., supra, and Leet v. Gratz, supra, where the cases bearing on this are very fully examined and discussed.]

In the first named case it is suggested rather than decided—not decided for lack of satisfactory proof of damage and that question not having been argued—that the measure of damage to be recovered by the assignee is the "value of the land at the time of his purchase, and his right of recovery against the first grantor upon the original covenant must of course be limited to his actual loss, although it cannot exceed the liability of the first vendor to his immediate grantee." It is the rule in the majority of the American states. [See Rawle on Covenants for Title (5 Ed.), sec. 158 *et seq.;* Maupin, supra, sec. 164, p. 390 *et seq.*] In some jurisdictions, however, notably in the New England states, the limi-

tation or measure of damage is not confined to the
value of the land at the time of the sale by the first
grantor but its value is taken as at the time of ouster
or eviction.    [See Rawle, supra, and Maupin, supra,
where the whole subject is elaborated.]    But no such
rule has ever been followed in our state.    [See Matheny
v. Stewart, 108 Mo. 73, 17 S. W. 1014, and Haselett v.
Woodruff, 150 Mo. 534, 51 S. W. 1048, for full collection
of the Missouri cases determining this matter.]    When
the question of the measure of damages did come before
our Supreme Court for direct determination, the meas-
ure of recovery was stated to be the purchase money, in-
terest and costs including attorney's fees for defending
the title.    [See also Leet v. Gratz, 92 Mo. App. 422.]
We need not consider this last item of damage here, as
there was no proof of any expenditure by this plaintiff
on account of costs or attorneys fees in defending the
title.

In the case at bar the consideration stated in the
deed from defendants to plaintiff's grantor, as we have
seen, is "the sum of ten dollars and other valuable consid-
erations to them paid by the parties of the second part,
the receipt of which is hereby acknowledged." Practically
the unbroken American rule as to the value of the land
is that which the parties have settled upon when they
traded; the price at the time of the sale. That is assumed
to have fixed the value.    While it has been held in some
English cases that "when the damages are to be calcu-
lated upon the basis of the purchase money, its amount,
if stated in the deed of conveyance cannot be contradict-
ed by parol evidence," the American rule and that pre-
vailing in our state is, that while evidence to contra-
dict or vary the consideration clause (there being no
issue of fraud) is inadmissible if offered to defeat the
conveyance as such, as for example, by showing that the
transaction is vo'd for want of consideration, yet that
for any purpose short of affecting the title, the consid-
eration clause of the deed is not conclusive but only

prima facie evidence of the amount therein named; and it is admissible on the part of plaintiff to show that the actual consideration which passed was greater than that expressed in the deed for the purpose of increasing the damages. [Guinotte v. Chouteau et al., 34 Mo. 154, l. c. 158.] On the other hand, it is equally admissible on the part of defendant to show that the real consideration was less, for the purpose of diminishing the damages. [Rawle, supra, secs. 173, 174; Maupin, sec. 167, and cases cited in notes.]

In the case at bar the deed from defendants to plaintiff's grantor contains no reservation or reference to the deed of trust. It is true that in a Massachusetts case, Estabrook v. Smith, 6 Gray (Mass.) 572, it was held that parol evidence was inadmissible to prove this, no agreement being set forth in the deed, that the grantee therein named had agreed to take the premises subject to a mortgage, the court holding that any such agreement should have appeared in some way in the deed or in some other written instrument. In the case at bar no reference is made, in the deed from defendants to their grantees, of any exception of the deed of trust from the conveyance of warranty in the deed, but it is in evidence in this case, by evidence put in without objection, and by plaintiff, that when this plaintiff purchased, he took subject to, but not, as we understand, assuming, the incumbrance for the $4500. Whether that was in his deed is not in evidence. But on the authority of decisions in this state, plaintiff here cannot recover, by way of damages, as a maximum, more than he himself has lost, nor can he recover of the original grantor, to whom he has resorted for his damages, more than that grantor has received. [See Leet v. Gratz, 92 Mo. App. 422, and cases there cited.] It is averred in the petition and in evidence in this case that the note for $4500, secured by the deed of trust, is in the hands of, and owned by, defendants. The trial took place on the 11th of October of that year. The note was then in the hands of defend-

ants obviously as its sole consideration was in part payment to defendants for this land, defendants could not enforce its payment against anybody or against the land. It appears from the testimony in this case, that before trial, foreclosure had been ordered under the $4500 deed of trust, on the refusal of plaintiff to pay any interest notes maturing after the third.

Counsel for respondent argues that from the facts in the case it is apparent that this note given by the Ashbys, the grantors of plaintiff, was perfectly good, and that if it should turn up in the hands of an innocent purchaser for value, the Ashbys would have to pay it, and he argues that in a suit at law on that note the breach of covenant of warranty would be no defense. He admits, however, that in equity and under our statute, that would be a defense, as against any one but an innocent holder for value and before maturity, and that the failure of consideration could be shown, either by way of recoupment, set-off or counterclaim, citing Rawle on Covenants, pp. 549 to 557. But that is not this case. We can determine it only on its own facts, not on supposition. So far as the evidence shows that note is still in the hands of and owned by appellants. Certainly, plaintiff has not paid it.

In the case of Beecher and wife v. Baldwin et al., 55 Conn. 419, l. c. 428, it is held: "In actions on the covenant against incumbrances the court will endeavor to give to the plaintiff the actual damage sustained by the breach of the covenant. If the plaintiff is evicted, and there is thereby a total failure of consideration, he will recover the value of the land at the time of the eviction, provided he has paid the purchase money. If the purchase money has been partially paid he will recover the amount paid with interest, not exceeding however the value of the land. The consideration having been paid, if the purchaser removes the incumbrance, the rule of damages is the amount paid for that purpose, not exceeding the value of the land. If the purchaser pays noth-

ing towards the removal of the incumbrance and is not evicted, he will recover only nominal damages."

It is said by a very learned judge and great authority, Chancellor LIVINGSTON, then one of the judges of the Supreme Court of New York, Chancellor KENT being another, in Staats v. Executors of Ten Eyck, 3 Caines (N. Y.) Rep. 111, considering a case involving the determination of damages for breach of the covenant of warranty in the sale of land, that "To find a proper rule of damage in a case like this is a work of some difficulty; no one will be entirely free from objection, or not at times work injustice."

Judge COOPER, better known as Chancellor COOPER, recognized the same difficulty in arriving at a decision in the case of Mette v. Dow, 77 Tenn 93. We find that difficulty recognized in all the adjudications of all the courts, not only of our own state but of outside jurisdictions, when the question of the proper admeasurement of damages for breach of covenants of warranty and for quiet enjoyment—practically running together (Maupin, note 24 to sec. 153)—is to be determined. The best we can do in the case at bar, is, under the application of settled principles, to endeavor to arrive at a just determination of the matter. It appears from all the cases which our courts follow, as well as from the decisions of our own courts, that the original grantor is not to be mulcted in damages for more than he has in fact received. Clearly the amount actually received by these grantors, defendants here, was $1000. It is equally clear that this plaintiff took subject to the incumbrance of $4500 and that he has not paid any of it, save three interest notes. As to these interest notes, they fall under the rule we shall hereafter refer to. If he is permitted to recover from defendants, as original grantors, the $1000 which their grantee, afterwards his grantor, paid in cash, as well as the additional $1000 or $1100, which he avers he paid to his grantor, he will place defendants in the position of responding, not for $5500 but for $6500 or

$6600, $1000 or $1100 more than, in any event, their grantee could have recovered off of them, those grantees not paying the $4500; $1000 or $1100 more than the consideration; $1000 or $1100 more than the agreed value of the land when sold by defendants, and when whatever title defendants had to it was passed over by them to plaintiff's grantor. Plaintiff is not entitled to this. All that he can recover is the $1000 which was the amount actually paid on this land by the Ashbys to defendants. While it is true that this is an action at law and not one seeking equitable relief, it is to be borne in mind that even in the determination of actions at law, the abolition of the distinction between the two systems of practice is so complete in our state, as to tend to cause us, in an endeavor to arrive at the very justness and fairness of the case, to mingle the two. We try to do equity even in strictly legal actions; often in actions at law do that which could anciently be done only in equity. Even our lawmakers tend in that direction. [See section 1812, Revised Statutes 1909.] If we were forced to apply any such principle or rule here, which we are not, and if we are to look to the equity of the case, which we are not compelled to do, it would be, as it strikes us, very inequitable to compel these defendants to respond for more than they actually received on this purchase, when we consider that the note which they took for the amount of the unpaid purchase money is absolutely worthless in their hands, and the deed of trust, which is assumed to secure that, entirely unenforceable in obtaining any right or interest in and to this property here involved. We hold that even at law, as here, this cannot and will not be done.

In addition to the recovery of this $1000, plaintiff is entitled to recover 6 per cent interest on it from the date of his eviction, January 6, 1909. It appears by the evidence in the case that from the time plaintiff received his deed down to the date of his eviction and dispossession he was in possession of the property. The presump-

tion of law is conclusive that the rents are an off-set to the interest. "Between vendor and vendee the conceded rule is to regard the interest the equivalent of the use of the land and, *e converso*, the use of the land the equivalent of the use—the interest—of the purchase money." [Hutchins v. Roundtree, 77 Mo. 500, 1. c. 505.]

It is suggested by counsel for appellants that there was not a total failure of title in the present case and that the respondent was therefore entitled only to recover *pro tanto*, citing Lawless v. Collier's Executors, 19 Mo. 480. There is no question of the correctness of this proposition. The trouble with it is two-fold: first, we are not sufficiently advised, by the evidence in the case, as to this fact to determine how far the title to defendants failed, nor are we assisted in determining this by any suggestion of counsel; in the second place, counsel for appellants has himself submitted that all that he asks is that the judgment of the circuit court be reversed and rendered in this court for $1000 and interest from January 6, 1909. We therefore do not consider it necessary to go into the determination of the exact extent of failure of title, as counsel himself does not appear to consider it at all material.

We do not accede to the request of counsel for appellants in this case to enter up judgment here for that amount; our practice and our preference is otherwise.

The judgment of the circuit court is reversed and the cause remanded, with directions to that court to enter up a judgment for plaintiff for $1000 and interest thereon at 6 per cent per annum from January 6, 1909, to date of judgment, as also for costs of this action in the circuit court; the costs of this appeal going against respondent, plaintiff below. *Nortoni* and *Caulfield, JJ.,* concur.