T. H. DIGGS et al., Respondents, v. LELIA HENSON, ADMINISTRATRIX, Appellant.

St. Louis Court of Appeals.    Argued and Submitted January 8, 1914.    Opinion Filed February 3, 1914.

1. COVENANTS OF WARRANTY: Rights of Subsequent Grantee. Where land is conveyed by a statutory general warranty deed carrying the usual covenants (Sec. 2793, R. S. 1909), and the grantee conveys the land to another by a quitclaim deed, the subsequent grantee is entitled to the benefit of the covenants in the warranty deed.

2. ————: Action for Breach: Measure of Damages. Where there is a total failure of title to land conveyed by a statutory general warranty deed carrying the usual covenants, the measure of damages, in an action by the grantee's grantee, is the amount paid out by him, plus interest and costs, up to the amount paid by him for the land, but not to exceed, however, the amount for which the defendant grantor would be liable to his immediate grantee.

3. ————: ————: Evidence: Recitals in Consideration Clause of Deed. Where land is conveyed by a statutory general warranty deed carrying the usual covenants, and the grantee conveys the land to another by a quitclaim deed, a recital in the latter deed of the payment of a certain sum as a consideration is not evidence of the payment of that sum, in an action by the subsequent grantee against the original grantor for breach of the covenants of warranty.

4. APPELLATE PRACTICE: Presumption of Correct Action by Trial Court. Where, in a trial to the court without a jury, on an objection to the admission of a deposition on the ground that the witness giving it was incompetent to testify, the trial court ruled that the deposition would be admitted "for the time being," and part of the testimony contained in the deposition was competent and part of it was incompetent, *held* that it would be assumed, on appeal, that the trial court admitted the deposition tentatively and subject to the objection made to it as a whole, and did not consider the incompetent evidence it contained in arriving at its final determination.

5. ————: Harmless Error. The admission of incompetent evidence concerning a fact admitted to be true is harmless error.

6. WITNESSES: Competency: Transactions with Decedent. In an action for breach of a covenant of warranty of title to real estate, brought against the administrator of the deceased grantor by the grantee's grantee, the original grantee was incompetent to testify, under Section 6354, R. S. 1909, concerning the consideration paid by him to the grantor; but both he and his grantee were competent to testify, under that statute, concerning the consideration paid to him for the subsequent conveyance, and his grantee was also competent to testify that he furnished the consideration for the original purchase and that the land was conveyed to him by the original grantee in pursuance of a contract between him and such grantee—the decedent not being a party to the subsequent transaction, and hence the statute not being applicable, and the fact that the subsequent grantee was a party to the record not being material, since he did not negotiate the contract with the original grantor.

7. ———: ———: ———. As to independent facts, the party to the contract and to the recovery is a competent witness, under Sec. 6354, R. S. 1909, even if the other party is dead.

8. INSTRUCTIONS: Refusal: Not Based on Evidence. It is proper to refuse to give an instruction which is not supported by any competent evidence.

9. EVIDENCE: Admissions: Abandoned Pleadings: Appellate Practice. Even if abandoned pleadings introduced in evidence are to be treated as admissions by the party who filed them, their effect is for the trial court, and its decision on the matter is conclusive, on appeal.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Peter H. Huck*, Judge.

AFFIRMED.

*J. L. Fort* for appellant.

(1) The rule of damages for breaches of warranty in the conveyance of land, in case of total failure of title, has ever been limited in this State to the purchase money paid, with interest thereon and costs. The recital in the deed from Henson to Shead of a consideration of one thousand dollars is no evidence of the sum paid by plaintiffs to Shead. In the deed from Shead to plaintiffs the recited consideration is one dollar. So far as plaintiffs are concerned, they are third persons as to the recited consideration in the deed from Henson to Shead, and the recital in the consideration clause in that deed is not evidence of the amount paid, or the value of the premises, as to plaintiffs—that is, the recital of the payment of one thousand dollars in the consideration clause of the deed from Henson to Shead is no evidence of the amount plaintiffs paid, or the value of the premises, and the recital of the payment of one dollar in the deed from Shead to plaintiffs is no evidence against defendant even of the payment of one-dollar. Coleman v. Lucksinger, 224 Mo. 17. (2) Shead was disqualified to

testify because he negotiated the Henson deed and was the surviving party to it. Plaintiffs were disqualified to testify because they derived their right of action for damages from Shead. It was not necessary that Shead should be a party to the suit in order to be disqualified. Banking House v. Rood, 132 Mo. 262; Leech v. McFadden, 110 Mo. 588. Nor was it necessary that he should have any interest in the suit or contract in order to be disqualified. Banking House v. Rood, 132 Mo. 261; McKee v. Downing, 224 Mo. 140. A party to the contract or cause of action is incompetent to testify in favor of himself or those claiming under him, although he is not a party to the record. Leech v. McFadden, 110 Mo. 584; Meier v. Thieman, 90 Mo. 433; Cleveland v. Coleson, 99 Mo. App. 468; Ford v. O'Donnell, 40 Mo. App. 51. The exception in our statute is intended to avoid the injustice that would arise in admitting the testimony of one party when the other is dead. Brim v. Flemming, 135 Mo. 606.

*Thomas Gallivan* for respondent.

(1) A party in interest is not incompetent to testify as to transactions had with other parties, to which the deceased was not a party. Jackson v. Smith, 139 Mo. App. 691; Carroll v. United Railway Co., 157 Mo. App. 247; Nugest v. Curran, 77 Mo. 323; Eyerman v. Piron, 151 Mo. 107; Orr v. Rode, 101 Mo. 387; Wade v. Hardy, 75 Mo. 394; Weiermeuller v. Scullin, 203 Mo. 466. (2) The covenants in a warranty deed, even if broken when made by reason of the fact that the defendants had no title and did not deliver possession, still are assignable as covenants of indemnity and the liabilities is the loss the grantee suffers not exceeding the amount paid to the original covenantor. And to that extent such a covenant runs with the land. Coleman v. Lucksinger, 224 Mo. 1; Johnson v. Johnson, 170 Mo. 49; Allen v. Kennedy, 91 Mo. 324.

REYNOLDS, P. J.—This is an action for damages for breach of the covenants of warranty of title, seizin, etc. By their deed, of date December, 1903, one Henson, joined by his wife, conveyed to one A. T. Shead certain lands in Stoddard county, Missouri, on the named consideration of $1000. The deed was the statutory general warranty deed carrying the usual covenants. Afterwards, on January 2, 1904, Shead and wife conveyed the same land to Diggs and Garanflo, respondents here, plaintiffs below, the deed, an ordinary quitclaim, purporting to convey the premises, to have and to hold the same, with all the rights, immunities, privileges and appurtenances thereto belonging, unto Diggs and Garanflo, their heirs, etc., forever. The consideration named in this deed is one dollar, receipt of which is acknowledged. The second amended petition, upon which the case was tried, averring the above, avers that at the date of the execution and delivery of these deeds, Henson was not seized of an indefeasible estate in fee simple in the premises but that, on the contrary, at the suit of one Keaton, a deed in the chain of title under which Henson claimed had been adjudged to have been forged and thereby title in Henson failed, title being adjudged in Keaton. Plaintiffs, respondents here, were parties defendant to that action. It is further averred that upon being served in that suit respondents had notified Henson of its commencement and pendency and required him to defend it but that he having failed and neglected to do so, respondents had been compelled, at their own expense, to defend it. All these averments are practically conceded. Henson having died thereafter and his wife having been appointed administratrix of his estate, defendants brought this action against her as administratrix of the estate of her husband, alleging breach of the covenant of warranty, title, etc., claiming the benefit of the covenants in the deed from Henson to Shead, and claiming $1000 damages and

interest at six per cent from January 2, 1904, for breach of the covenants and also claiming costs expended in the beforementioned suit. These latter averments are denied.

The answer was a general denial, with the further defense pleaded that Henson was not the immediate grantor of and to plaintiffs; that he had sold the premises to Shead and that Shead had conveyed them by quitclaim to plaintiffs for the expressed consideration of one dollar, and that neither Henson, the deceased, nor Shead, had any title whatever, either defeasible or indefeasible, or any possession whatever, either actual or constructive, of, in or to the premises described.

The trial was before the court, a jury having been waived, which resulted in a finding for plaintiffs in the sum of $1000, with interest at the rate of six per cent per annum from the date of institution of this action and for costs. Judgment following, defendant, interposing a motion for new trial and excepting to that being overruled, has duly perfected her appeal to this court.

There are no formal assignments of error, but counsel for appellant makes three points upon which he relies for reversal. Taking up and considering them in their order, the first point made is, that "the rule of damages for breach of warranty in a conveyance of land in case of a total failure of title, is limited in this State to the purchase money paid, with interest thereon and costs; that the recital in the deed from Henson to Shead of a consideration of $1000 is not evidence of the sum paid by plaintiffs to Shead; that in the deed from Shead to plaintiffs, the recited consideration is one dollar and that so far as plaintiffs are concerned, they are third persons as to the recited consideration in the deed from Henson to Shead and the recital in the consideration clause of that deed is not evidence of the amount paid or value of the prem-

ises as to plaintiffs, that is, the recital of the payment of one thousand dollars in the consideration clause of the deed from Henson to Shead is no evidence of the amount plaintiffs paid or of the value of the premises, and the recital that the payment of one dollar in the deed from Shead to plaintiff is no evidence against defendant even of the payment of one dollar." Coleman v. Lucksinger, 224 Mo. 1, l. c. 17, 18, 123 S. W. 441, is cited for this. There Matheny v. Stewart, 108 Mo. 73, 17 S. W. 1014, and Hazelett v. Woodruff, 150 Mo. 534, l. c. 541, 51 S. W. 1048, are cited in support of the above rule of damages for a breach of warranties in the conveyance of land in case of total failure of title, namely damages have always been limited in this State to the purchase money paid with interest thereon and costs, that measure applying also to breach of covenant of seizin. This court had occasion to consider that same question in Staed v. Rossier, 157 Mo. App. 300, 137 S. W. 901, and following the rule above announced, further held that the right of recovery of the assignee against the first grantor upon the original covenant " 'must of course be limited to his actual loss, although it cannot exceed the liability of the first vendor to his immediate grantee,' " the subquote being from Dickson v. Desire's Admr., 23 Mo. 151. In Coleman v. Lucksinger, supra, l. c. 15, passing on the effect of a special warranty deed, which in legal effect was a mere quitclaim, as we understand, without the statutory words "grant, bargain and sell," and warranting only against any acts of the grantors, Allen v. Kennedy, 91 Mo. 324, 3 S. W. 142, is quoted approvingly as holding, that the covenant of seizin of an indefeasible estate in fee is more than a covenant in the present tense—"is rather a covenant of indemnity; . . . that it runs with the land to the extent that if the covenantee takes any estate, however defeasible, or if possession accompanies the deed, though no title pass, yet, in either event, this

covenant runs with the land and inures to the subse-
quent grantee, upon whom the loss falls.'' Dickson v.
Desire's Admr., supra, and other cases are cited in
support of this. It is further held in the Allen case that
choses in action are assignable in our State, and that
damages arising from the breach of the covenants in
a deed may be assigned, and when assigned, ''the
assignee and he alone, can sue,'' and that by our
statute ''any person claiming title to real estate, may,
though there be an adverse possession, convey his in-
terest as if he were in the actual possession.'' It is
true that both of the deeds before the court in Allen
v. Kennedy, supra, were statutory general warranty
deeds. But, as will be noted, the court, in Coleman v.
Lucksinger, supra, applied the law announced in the
Allen case to one in which the deed to the plaintiff
there was one of special warranty, with no covenants
except as against the acts of the grantor in the latter
deed.

Johnson v. Johnson, 170 Mo. 34, l. c. 49, 70 S. W.
241, is also cited in the Coleman case as following the
Allen case. In the Johnson case it is distinctly held
(l. c. 49): ''The quitclaim of his grantee could not
affect the measure of the liability (of the original
grantor) on his covenants and if his grantee has con-
veyed the property and assigned the covenants which
run with the land to . . . defendant, then the lat-
ter is entitled to all the benefits arising from them in
the same manner as . . . the grantee of the first
grantor would have been if he had not conveyed to the
defendants. It is not different because the deed to
the latter is a quitclaim deed. Such an instrument was
sufficient to invest the latter with all the rights of his
grantor.''

Applying the rule announced in these cases to the
facts here, by the quitclaim from Shead to respond-
ents, the latter became entitled to the benefit of the
covenants in the deed from Henson to Shead.

The question then arises: What is the amount of damage plaintiffs can recover, the rule being, as before stated, that for a breach of the covenants, the last covenantees, being plaintiffs, are entitled to recover as damages the amount of money paid out by them, plus interest and costs, up to the amount paid by them for the land. That involves the ascertainment of how much the plaintiffs, respondents here, did pay.

This brings us to consideration of the second point made by the learned counsel for appellant. That counsel claiming that there is no proof that plaintiffs, respondents here, paid Shead anything for the land except that to be found in the deposition of Shead, and in the testimony of Diggs, argues that as these witnesses were incompetent to prove what plaintiffs paid for the land, it follows that the judgment is without testimony to support it and must be reversed. This point depends for support upon the improper admission of testimony given by Shead and Diggs, as it is claimed, objections having been duly made and exceptions saved to its admission.

We are relieved from consideration of any question as to the payment of the thousand dollars from Shead to Henson. That is admitted. It may be conceded that there is no evidence that respondents paid Shead anything for the conveyance from him to them. It is true that the quitclaim recites a consideration of one dollar and acknowledges the receipt of that, but this is no evidence of the payment of even that sum, and so appellant's counsel correctly argues in his first point. The question then arises, again turning to the second point, whether there is any legal proof of the connection of Diggs and Garanflo with this conceded payment of one thousand dollars by Shead to Henson. Henson dying before the institution of this suit, it is clear that under the provisions of our statute, respondents, if original parties to the contract, one with whom

the contract or transaction was had, are not competent witnesses to what took place in that transaction between the other party, since dead, and the surviving party. Nor was Shead, if acting at the time for Diggs and Garanflo; and that is so, in whatever capacity he was acting, whether as agent or as trustee, if he represented respondents in the transaction. [See Waltemar v. Schnick's Estate, 102 Mo. App. 133, 76 S. W. 1053, and Columbia Brewery Co. v. Rohling and Menke, 133 Mo. App. 65, 112 S. W. 767.]

In Carroll v. United Railways Co., 157 Mo. App. 247, 137 S. W. 303, we had occasion to discuss the question of the admissibility of the testimony of parties and their agents as arising under the provisions of section 6354, Revised Statutes 1909; more properly, under the proviso to that section, to the effect that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party to such contract or cause of action shall not be admitted to testify. We there held that the conversation sought to be introduced being between the agent of the defendant and the agent of plaintiff, that the agent of the former having died since the conversation, the agent of the latter was not a competent witness to testify as to conversations between him and the agent of the defendant touching that transaction. After reviewing the decisions in our State, which it must be admitted are not entirely consistent, we said (l. c. 286): "The controlling rule we deduce for the construction of this proviso, on consideration of the great weight of decision, to state it briefly, is that not only the letter of the statute but also its spirit must be carefully looked to in its interpretation and so interpreted it excludes the living agent when the agent with whom he negotiated is dead." But we also said in the same case (l. c. 288): "Our Supreme Court has held in several cases, that while the witness is disqualified from testifying as to

the matter of the negotiation between him and the dead party, he is not incompetent or disqualified as a witness as to other matters taking place which did not occur between him and the deceased party or agent.'' It is to this last paragraph that we are referred by counsel for respondents in support of the admission of part of the testimony in this case given by Shead and by Diggs.

While this case of Carroll v. United Railways Company, supra, is before us, we call attention to a typographical error in the opinion as published. At page 276, commencing at the third line from the top of that page, this appears: ''Darks v. Scudder-Gale Grocer Co., 146 Mo. App. 246, 130 S. W. 430, a decision by the Springfield Court of Appeals, is ruled by that court on the distinct ground that the proviso of the statute relates solely to actions on contracts and does not apply to actions in tort, which was the character of the case before that court.'' This is an error. The paragraph should read: ''Darks v. Scudder-Gale Grocer Co., 146 Mo. App. 246, 130 S. W. 430, a decision by the Springfield Court of Appeals, is ruled by that court on the distinct ground that the proviso of the statute does not apply solely to actions on contracts and does apply to actions in tort, which was the character of the case before that court.

With the quotation from page 288, Carroll v. United Railways Company, supra, before us, and referring to the testimony of Shead and of Diggs, we find that some of that of Shead does relate to conversations between himself and Henson touching this transaction. The testimony of Mr. Shead was taken by deposition. When it was offered it was objected to on the ground of his incompetency, Henson being dead. The court admitted the deposition, stating that the objection would be overruled ''for the time being.'' That part of this testimony which relates to transactions between Shead and Henson should have been ex-

cluded, and we assume that the learned trial judge, admitting it only tentatively and subject to the objection made to the whole deposition, did not consider it in arriving at his final determination. Outside of the objectionable testimony there remains testimony that was admissible under the rule last above quoted from the Carroll case, supra. That part of the testimony given by Shead in his deposition which has a material bearing upon the point here under consideration, namely, how much did these respondents pay for the land, did not involve conversations or transactions between Shead and Henson, and was proper to be considered. Moreover, as before noted, as it is admitted by counsel for appellant, in his printed argument before us, that the consideration named in the deed from Henson to Shead, one thousand dollars, was paid to Henson by Shead, the testimony of Shead to that effect, even if considered, is of no importance, and its admission, if that occurred, is wholly immaterial and not harmful error. But Shead further testified that the thousand dollars he paid Henson was the money of respondents, and that after receiving the deed from Henson, he and his wife conveyed the real estate to respondents; that while the consideration recited in this latter deed was one dollar, the real consideration rested on the fact that the thousand dollars which he paid Henson was furnished him by Diggs and Garanflo. Shead further testified that at no time had the actual ownership of the land been in him; that in consequence of the arrangement between himself and Diggs and Garanflo he had made and delivered the quitclaim to them. Whether they paid him the dollar is immaterial, this being so. We are unable to see that this testimony relates to any contract or transaction had between Shead and Henson.

So far as Mr. Diggs, one of the respondents, is concerned, he testified that in the purchase of the land by Shead from Henson, Shead was acting for respond-

ents; that he bought this land for them, and that they had paid the $1000 for the land which it is admitted Shead had paid to Henson. The only effect of this testimony is to show whose money that was, as between Shead and respondents. The testimony of Mr. Diggs confirms that of Shead that it was the money of Diggs and Garanflo. That testimony involved no testimony of transactions between Diggs and Garanflo on the one side and Henson on the other. It merely went to the fact that the money which Shead had and which it is admitted he paid Henson, was the money of Diggs and Garanflo, and that Diggs and Garanflo, notwithstanding the recital in the quitclaim deed of one dollar paid, had in fact paid one thousand dollars for the land. Diggs was not an incompetent witness to this matter. It is true he is a party to the record here but, as held by our Supreme Court, " 'a party to the contract,' has been construed to mean the person who negotiated the contract rather than the person in whose name and interest it was made." [Banking House v. Rood, 132 Mo. 256, l. c. 262, 33 S. W. 816; Southern Commercial Savings Bank v. Slattery's Admr., 166 Mo. 620, l. c. 633, 66 S. W. 1066; McKee v. Downing, 224 Mo. 115, l. c. 140, 124 S. W. 7.] As to independent facts, the party to the contract and to the recovery is competent even if the other party is dead. [Banking House v. Rood, supra, l. c. 263.] Whether the fact of whose money it was that was paid to him, or in what capacity Shead was acting when he paid it, was known or told to Henson, is entirely immaterial, as long as no fraud was practiced on him, and there is no pretense that there was any.

We therefore hold that so far as the testimony of Shead is concerned, that part of it which related to the transaction other than had with Henson, was properly admitted, and the admission of other portions of it, while error, was harmless error, the trial being before the court without a jury. It follows from this that

there was proof that these respondents had paid, through Shead, the $1000, which was for the purchase of this land; that they were the real purchasers and as such entitled to the benefit of the covenants in the deed from Henson to Shead, that passing to them through Shead's deed to them.

The third point made is that there is no testimony that Shead was acting as the agent of plaintiffs in purchasing the land from Henson, and no evidence that the money Shead paid to Henson for the land was the money of plaintiffs, and no evidence that by inadvertence or oversight the deed was made by Henson to Shead instead of to plaintiffs, except that found in the deposition of Shead and the testimony of Diggs, and it being claimed that the testimony of Shead and Diggs was incompetent as proof or testimony as to these matters, it is argued that the judgment is without testimony to support it. We have disposed of this, by what we have said above, contrary to the contention of the learned counsel for appellant.

That counsel asked several instructions in support of his theory that there was no competent testimony in the case showing any consideration from Shead to respondents or from Henson to respondents. All these were, as we think, properly refused. As we have said above, there was testimony showing that, outside of any incompetent testimony which may have been introduced.

In support of a point made that the position taken by plaintiffs in their second amended petition, the one on which the case was tried, was inconsistent with the position taken by them in the original and first amended petition, those abandoned pleadings were introduced in evidence by defendant. Conceding that they are inconsistent, the matter before the trial court for its determination here was the real fact attendant upon the transaction. Even if these abandoned pleadings are to be treated as admissions by respondents,

their effect was for the trial court. His decision on the matter concludes us.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.